(Slip Opinion)     OCTOBER TERM, 2015     1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## WELCH *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 15–6418.  Argued March 30, 2016—Decided April 18, 2016

Federal law makes the possession of a firearm by a felon a crime punishable by a prison term of up to 10 years, 18 U. S. C. §§922(g), 924(a)(2), but the Armed Career Criminal Act of 1984 increases that sentence to a mandatory 15 years to life if the offender has three or more prior convictions for a "serious drug offense" or a "violent felony," §924(e)(1).  The definition of "violent felony" includes the so-called residual clause, covering any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another."  §924(e)(2)(B)(ii).  In *Johnson* v. *United States*, 576 U. S. ___, this Court held that clause unconstitutional under the void-for-vagueness doctrine.

Petitioner Welch was sentenced under the Armed Career Criminal Act before *Johnson* was decided.  On direct review, the Eleventh Circuit affirmed his sentence, holding that Welch's prior Florida conviction for robbery qualified as a "violent felony" under the residual clause.  After his conviction became final, Welch sought collateral relief under 28 U. S. C. §2255, which the District Court denied.  The Eleventh Circuit then denied Welch a certificate of appealability.  Three weeks later, this Court decided *Johnson.*  Welch now seeks the retroactive application of *Johnson* to his case.

*Held*: *Johnson* announced a new substantive rule that has retroactive effect in cases on collateral review.  Pp. 6–15.

  (a) An applicant seeking a certificate of appealability in a §2255 proceeding must make "a substantial showing of the denial of a constitutional right."  §2253(c)(2).  That standard is met when "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner."  *Slack* v. *McDaniel*, 529 U. S. 473, 484. The question whether Welch met that standard implicates a broader

legal issue: whether *Johnson* is a substantive decision with retroactive effect in cases on collateral review. If so, then on the present record reasonable jurists could at least debate whether Welch should obtain relief in his collateral challenge to his sentence. Pp. 6–7.

(b) New constitutional rules of criminal procedure generally do not apply retroactively to cases on collateral review, but new substantive rules do apply retroactively. *Teague* v. *Lane*, 489 U. S. 288, 310; *Schriro* v. *Summerlin*, 542 U. S. 348, 351. Substantive rules alter "the range of conduct or the class of persons that the law punishes," *id.*, at 353. Procedural rules, by contrast, "regulate only the *manner of determining* the defendant's culpability." *Ibid.* Under this framework, *Johnson* is substantive. Before *Johnson*, the residual clause could cause an offender to face a prison sentence of at least 15 years instead of at most 10. Since *Johnson* made the clause invalid, it can no longer mandate or authorize any sentence. By the same logic, *Johnson* is not procedural, since it had nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced under the Act, see *Schriro*, *supra*, at 353. Pp. 7–9.

(c) The counterarguments made by Court-appointed *amicus* are unpersuasive. She contends that *Johnson* is a procedural decision because the void-for-vagueness doctrine is based on procedural due process. But the *Teague* framework turns on whether the function of the rule is substantive or procedural, not on the rule's underlying constitutional source. *Amicus*' approach would lead to results that cannot be squared with prior precedent. Precedent also does not support *amicus*' claim that a rule must limit Congress' power to be substantive, see, *e.g., Bousley* v. *United States*, 523 U. S. 614, or her claim that statutory construction cases are an ad hoc exception to that principle and are substantive only because they implement the intent of Congress. The separation-of-powers argument raised by *amicus* is also misplaced, for regardless of whether a decision involves statutory interpretation or statutory invalidation, a court lacks the power to exact a penalty that has not been authorized by any valid criminal statute. Pp. 10–15.

Vacated and remanded.

KENNEDY, J., delivered the opinion of the Court, in which ROBERTS, C. J., and GINSBURG, BREYER, ALITO, SOTOMAYOR, and KAGAN, JJ., joined. THOMAS, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 15–6418

GREGORY WELCH, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[April 18, 2016]

JUSTICE KENNEDY delivered the opinion of the Court.

Last Term, this Court decided *Johnson* v. *United States*,
576 U. S. \_\_\_ (2015). *Johnson* considered the residual
clause of the Armed Career Criminal Act of 1984, 18
U. S. C. §924(e)(2)(B)(ii). The Court held that provision
void for vagueness. The present case asks whether *John-
son* is a substantive decision that is retroactive in cases on
collateral review.

I

Federal law prohibits any felon—meaning a person who
has been convicted of a crime punishable by more than a
year in prison—from possessing a firearm. 18 U. S. C.
§922(g). A person who violates that restriction can be
sentenced to prison for up to 10 years. §924(a)(2). For
some felons, however, the Armed Career Criminal Act
imposes a much more severe penalty. Under the Act, a
person who possesses a firearm after three or more convic-
tions for a "serious drug offense" or a "violent felony" is
subject to a minimum sentence of 15 years and a maxi-
mum sentence of life in prison. §924(e)(1). Because the
ordinary maximum sentence for a felon in possession of a
firearm is 10 years, while the minimum sentence under

the Armed Career Criminal Act is 15 years, a person sentenced under the Act will receive a prison term at least five years longer than the law otherwise would allow.

The Act defines "violent felony" as

> "any crime punishable by imprisonment for a term exceeding one year . . . that—

> "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> "(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  §924(e)(2)(B).

Subsection (i) of this definition is known as the elements clause.  The end of subsection (ii)—"or otherwise involves conduct that presents a serious potential risk of physical injury to another"—is known as the residual clause.  See *Johnson, supra,* at ___ (slip op., at 2).  It is the residual clause that *Johnson* held to be vague and invalid.

The text of the residual clause provides little guidance on how to determine whether a given offense "involves conduct that presents a serious potential risk of physical injury."  This Court sought for a number of years to develop the boundaries of the residual clause in a more precise fashion by applying the statute to particular cases.  See *James* v. *United States*, 550 U. S. 192 (2007) (residual clause covers Florida offense of attempted burglary); *Begay* v. *United States*, 553 U. S. 137 (2008) (residual clause does not cover New Mexico offense of driving under the influence of alcohol); *Chambers* v. *United States*, 555 U. S. 122 (2009) (residual clause does not cover Illinois offense of failure to report to a penal institution); *Sykes* v. *United States*, 564 U. S. 1 (2011) (residual clause covers Indiana offense of vehicular flight from a law-enforcement

officer). In *Johnson*, a majority of this Court concluded that those decisions did not bring sufficient clarity to the scope of the residual clause, noting that the federal courts remained mired in "pervasive disagreement" over how the clause should be interpreted. *Johnson*, 576 U. S., at ___ (slip op., at 9).

The *Johnson* Court held the residual clause unconstitutional under the void-for-vagueness doctrine, a doctrine that is mandated by the Due Process Clauses of the Fifth Amendment (with respect to the Federal Government) and the Fourteenth Amendment (with respect to the States). The void-for-vagueness doctrine prohibits the government from imposing sanctions "under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Id.*, at ___ (slip op., at 3). *Johnson* determined that the residual clause could not be reconciled with that prohibition.

The vagueness of the residual clause rests in large part on its operation under the categorical approach. The categorical approach is the framework the Court has applied in deciding whether an offense qualifies as a violent felony under the Armed Career Criminal Act. See *id.,* at ___ (slip op., at 4). Under the categorical approach, "a court assesses whether a crime qualifies as a violent felony 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.'" *Ibid.* (quoting *Begay*, *supra*, at 141). For purposes of the residual clause, then, courts were to determine whether a crime involved a "serious potential risk of physical injury" by considering not the defendant's actual conduct but an "idealized ordinary case of the crime." 576 U. S., at ___ (slip op., at 12).

The Court's analysis in *Johnson* thus cast no doubt on the many laws that "require gauging the riskiness of conduct in which an individual defendant engages *on a*

*particular occasion.*" *Ibid.* The residual clause failed not because it adopted a "serious potential risk" standard but because applying that standard under the categorical approach required courts to assess the hypothetical risk posed by an abstract generic version of the offense. In the *Johnson* Court's view, the "indeterminacy of the wide-ranging inquiry" made the residual clause more unpre-dictable and arbitrary in its application than the Consti-tution allows. *Id.*, at ___ (slip op., at 5). "Invoking so shapeless a provision to condemn someone to prison for 15 years to life," the Court held, "does not comport with the Constitution's guarantee of due process." *Id.*, at ___ (slip op., at 10).

## II

Petitioner Gregory Welch is one of the many offenders sentenced under the Armed Career Criminal Act before *Johnson* was decided. Welch pleaded guilty in 2010 to one count of being a felon in possession of a firearm. The Probation Office prepared a presentence report finding that Welch had three prior violent felony convictions, including a Florida conviction for a February 1996 "strong-arm robbery." The relevant Florida statute prohibits taking property from the person or custody of another with "the use of force, violence, assault, or putting in fear." Fla. Stat. §812.13(1) (1994). The charging document from the 1996 Florida case tracked that statutory language. App. 187a. The 2010 federal presentence report provides more detail. It states that, according to the robbery victim, Welch punched the victim in the mouth and grabbed a gold bracelet from his wrist while another attacker grabbed a gold chain from his neck.

Welch objected to the presentence report, arguing (as relevant here) that this conviction was not a violent felony conviction under the Armed Career Criminal Act. The District Court overruled the objection. It concluded that

the Florida offense of strong-arm robbery qualified as a violent felony both under the elements clause, 18 U. S. C. §924(e)(2)(B)(i), and the residual clause, §924(e)(2)(B)(ii). The District Court proceeded to sentence Welch to the Act's mandatory minimum sentence of 15 years in prison.

The Court of Appeals for the Eleventh Circuit affirmed. That court did not decide whether the conviction at issue could qualify as a violent felony under the elements clause. Instead, it held only that the conviction qualified under the residual clause. This Court denied certiorari, see *Welch* v. *United States*, 568 U. S. ___ (2013), and Welch's conviction became final.

In December 2013, Welch appeared *pro se* before the District Court and filed a collateral challenge to his conviction and sentence through a motion under 28 U. S. C. §2255. He argued, among other points, that his strong-arm robbery conviction itself was "vague" and that his counsel was ineffective for allowing him to be sentenced as an armed career criminal. The District Court denied the motion and denied a certificate of appealability.

Still proceeding *pro se*, Welch applied to the Court of Appeals for a certificate of appealability. His application noted that *Johnson* was pending before this Court. Welch argued, in part, that his "armed career offender status is unconstitutional and violate[s] [his] Fifth Amendment right to notice of the state priors." App. 20a. Two months later, Welch filed a motion asking the Court of Appeals to hold his case in abeyance until *Johnson* could be decided, "based on the fact he was sentenced under the [residual clause]." App. 15a.

In June 2015, the Court of Appeals entered a brief single-judge order denying the motion for a certificate of appealability. Less than three weeks later, this Court issued its decision in *Johnson* holding, as already noted, that the residual clause is void for vagueness. Welch filed a motion asking the Court of Appeals for additional time

to seek reconsideration of its decision in light of *Johnson*, but the court returned that motion unfiled because Welch's time to seek reconsideration already had expired.

Welch then filed a *pro se* petition for certiorari. His petition presented two questions: whether the District Court erred in denying his §2255 motion because his Florida robbery conviction does not qualify as a violent felony conviction under the Armed Career Criminal Act; and whether *Johnson* announced a substantive rule that has retroactive effect in cases on collateral review. Pet. for Cert. i. This Court granted the petition. 577 U. S. ___ (2016). Because the United States, as respondent, agrees with Welch that *Johnson* is retroactive, the Court appointed Helgi C. Walker as *amicus curiae* in support of the judgment of the Court of Appeals. She has ably discharged her responsibilities.

## III
### A

This case comes to the Court in a somewhat unusual procedural posture. Under the Antiterrorism and Effective Death Penalty Act of 1996, there can be no appeal from a final order in a §2255 proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U. S. C. §2253(c)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." §2253(c)(2). That standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner." *Slack* v. *McDaniel*, 529 U. S. 473, 484 (2000). Obtaining a certificate of appealability "does not require a showing that the appeal will succeed," and "a court of appeals should not decline the application . . . merely because it believes the applicant will not demonstrate an entitlement to relief." *Miller-El* v. *Cockrell*, 537 U. S. 322, 337 (2003).

The decision under review here is the single-judge order in which the Court of Appeals denied Welch a certificate of appealability. Under the standard described above, that order determined not only that Welch had failed to show any entitlement to relief but also that reasonable jurists would consider that conclusion to be beyond all debate. See *Slack, supra*, at 484. The narrow question here is whether the Court of Appeals erred in making that determination. That narrow question, however, implicates a broader legal issue: whether *Johnson* is a substantive decision with retroactive effect in cases (like Welch's) on collateral review. If so, then on the present record reasonable jurists could at least debate whether Welch should obtain relief in his collateral challenge to his sentence. On these premises, the Court now proceeds to decide whether *Johnson* is retroactive.

B

The normal framework for determining whether a new rule applies to cases on collateral review stems from the plurality opinion in *Teague* v. *Lane*, 489 U. S. 288 (1989). That opinion in turn drew on the approach outlined by the second Justice Harlan in his separate opinions in *Mackey* v. *United States*, 401 U. S. 667 (1971), and *Desist* v. *United States*, 394 U. S. 244 (1969). The parties here assume that the *Teague* framework applies in a federal collateral challenge to a federal conviction as it does in a federal collateral challenge to a state conviction, and we proceed on that assumption. See *Chaidez* v. *United States*, 568 U. S. \_\_\_, \_\_\_, n. 16 (2013); *Danforth* v. *Minnesota*, 552 U. S. 264, 269, n. 4 (2008).

Under *Teague*, as a general matter, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U. S., at 310. *Teague* and its progeny recognize two categories of decisions that fall outside this

general bar on retroactivity for procedural rules. First, "[n]ew *substantive* rules generally apply retroactively." *Schriro* v. *Summerlin*, 542 U. S. 348, 351 (2004); see *Montgomery* v. *Louisiana*, 577 U. S. ___, ___ (2016) (slip op., at 6); *Teague, supra*, at 307, 311. Second, new "'watershed rules of criminal procedure,'" which are procedural rules "implicating the fundamental fairness and accuracy of the criminal proceeding," will also have retroactive effect. *Saffle* v. *Parks*, 494 U. S. 484, 495 (1990); see *Teague, supra*, at 311–313.

It is undisputed that *Johnson* announced a new rule. See *Teague, supra*, at 301 ("[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final"). The question here is whether that new rule falls within one of the two categories that have retroactive effect under *Teague*. The parties agree that *Johnson* does not fall into the limited second category for watershed procedural rules. Welch and the United States contend instead that *Johnson* falls into the first category because it announced a substantive rule.

"A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." *Schriro*, 542 U. S., at 353. "This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Id.*, at 351–352 (citation omitted); see *Montgomery, supra*, at ___ (slip op., at 6). Procedural rules, by contrast, "regulate only the *manner of determining* the defendant's culpability." *Schriro*, 542 U. S., at 353. Such rules alter "the range of permissible methods for determining whether a defendant's conduct is punishable." *Ibid.* "They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility

that someone convicted with use of the invalidated proce-
dure might have been acquitted otherwise." *Id.*, at 352.

Under this framework, the rule announced in *Johnson*
is substantive. By striking down the residual clause as
void for vagueness, *Johnson* changed the substantive
reach of the Armed Career Criminal Act, altering "the
range of conduct or the class of persons that the [Act]
punishes." *Schriro*, *supra*, at 353. Before *Johnson*, the
Act applied to any person who possessed a firearm after
three violent felony convictions, even if one or more of
those convictions fell under only the residual clause. An
offender in that situation faced 15 years to life in prison.
After *Johnson*, the same person engaging in the same
conduct is no longer subject to the Act and faces at most
10 years in prison. The residual clause is invalid under
*Johnson*, so it can no longer mandate or authorize any
sentence. *Johnson* establishes, in other words, that "even
the use of impeccable factfinding procedures could not
legitimate" a sentence based on that clause. *United States*
v. *United States Coin & Currency*, 401 U. S. 715, 724
(1971). It follows that *Johnson* is a substantive decision.

By the same logic, *Johnson* is not a procedural decision.
*Johnson* had nothing to do with the range of permissible
methods a court might use to determine whether a de-
fendant should be sentenced under the Armed Career
Criminal Act. See *Schriro*, 542 U. S., at 353. It did not,
for example, "allocate decisionmaking authority" between
judge and jury, *ibid.*, or regulate the evidence that the
court could consider in making its decision, see *Whorton* v.
*Bockting*, 549 U. S. 406, 413–414, 417 (2007); *Mackey*,
*supra*, at 700–701 (opinion of Harlan, J.). Unlike those
cases, *Johnson* affected the reach of the underlying statute
rather than the judicial procedures by which the statute is
applied. *Johnson* is thus a substantive decision and so has
retroactive effect under *Teague* in cases on collateral
review.

## C

*Amicus* urges the Court to adopt a different understanding of the *Teague* framework. She contends courts should apply that framework by asking whether the constitutional right underlying the new rule is substantive or procedural. Under that approach, *amicus* concludes that *Johnson* is a procedural decision because the void-for-vagueness doctrine that *Johnson* applied is based, she asserts, on procedural due process.

Neither *Teague* nor its progeny support that approach. As described above, this Court has determined whether a new rule is substantive or procedural by considering the function of the rule, not its underlying constitutional source. See, *e.g., Schriro, supra*, at 351–353. That is for good reason. The *Teague* framework creates a balance between, first, the need for finality in criminal cases, and second, the countervailing imperative to ensure that criminal punishment is imposed only when authorized by law. That balance turns on the function of the rule at issue, not the constitutional guarantee from which the rule derives. If a new rule regulates only the procedures for determining culpability, the *Teague* balance generally tips in favor of finality. The chance of a more accurate outcome under the new procedure normally does not justify the cost of vacating a conviction whose only flaw is that its procedures "conformed to then-existing constitutional standards." *Teague, supra*, at 310. On the other hand, if a new rule changes the scope of the underlying criminal proscription, the balance is different. A change of that character will "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal.'" *Bousley* v. *United States*, 523 U. S. 614, 620 (1998) (quoting *Davis* v. *United States*, 417 U. S. 333, 346 (1974)). By extension, where the conviction or sentence in fact is not authorized by substantive law, then finality interests are at their weakest. As Justice Harlan wrote,

"[t]here is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose." *Mackey*, 401 U. S., at 693 (opinion of Harlan, J.).

The *Teague* balance thus does not depend on whether the underlying constitutional guarantee is characterized as procedural or substantive. It depends instead on whether the new rule itself has a procedural function or a substantive function—that is, whether it alters only the procedures used to obtain the conviction, or alters instead the range of conduct or class of persons that the law punishes. See *Schriro*, *supra*, at 353; *Montgomery*, 577 U. S., at ___ (slip op., at 14). The emphasis by *amicus* on the constitutional guarantee behind the new rule, then, would untether the *Teague* framework from its basic purpose.

The approach *amicus* suggests also would lead to results that cannot be squared with prior precedent. Decisions from this Court show that a rule that is procedural for *Teague* purposes still can be grounded in a substantive constitutional guarantee. For instance, the Court has adopted certain rules that regulate capital sentencing procedures in order to enforce the substantive guarantees of the Eighth Amendment. The consistent position has been that those rules are procedural, even though their ultimate source is substantive. See, *e.g., Beard* v. *Banks*, 542 U. S. 406, 408, 416–417 (2004); *Sawyer* v. *Smith*, 497 U. S. 227, 233, 241–242 (1990). From the converse perspective, there also can be substantive rules based on constitutional protections that, on the theory *amicus* advances, likely would be described as procedural. For instance, a decision that invalidates as void for vagueness a statute prohibiting "conduct annoying to persons passing by," cf. *Coates* v. *Cincinnati*, 402 U. S. 611, 612, 614 (1971), would doubtless alter the range of conduct that the law prohibits. That would make it a substantive decision under our precedent, see *Schriro*, 542 U. S., at 353, even if the reasons for holding that statute invalid could be char-

acterized as procedural.

*Amicus* next relies on language from this Court's cases describing substantive decisions as those that "place particular conduct or persons . . . beyond the State's power to punish," *id.*, at 352, or that "prohibi[t] a certain category of punishment for a class of defendants because of their status or offense," *Saffle*, 494 U. S., at 494 (internal quotation marks omitted). Cases such as these, in which the Constitution deprives the Government of the power to impose the challenged punishment, "represen[t] the clearest instance" of substantive rules for which retroactive application is appropriate. *Mackey*, *supra*, at 693 (opinion of Harlan, J.). Drawing on those decisions, *amicus* argues that *Johnson* is not substantive because it does not limit Congress' power: Congress is free to enact a new version of the residual clause that imposes the same punishment on the same persons for the same conduct, provided the new statute is precise enough to satisfy due process.

Although this Court has put great emphasis on substantive decisions that place certain conduct, classes of persons, or punishments beyond the legislative power of Congress, the Court has also recognized that some substantive decisions do not impose such restrictions. The clearest example comes from *Bousley*, *supra*. In *Bousley*, the Court was asked to determine what retroactive effect should be given to its decision in *Bailey* v. *United States*, 516 U. S. 137 (1995). *Bailey* considered the "use" prong of 18 U. S. C. §924(c)(1), which imposes increased penalties on the use of a firearm in relation to certain crimes. The Court held as a matter of statutory interpretation that the "use" prong punishes only "active employment of the firearm" and not mere possession. 516 U. S., at 144. The Court in *Bousley* had no difficulty concluding that *Bailey* was substantive, as it was a decision "holding that a substantive federal criminal statute does not reach certain conduct." *Bousley*, *supra*, at 620; see *Schriro*, *supra*, at

354 ("A decision that modifies the elements of an offense is normally substantive rather than procedural"). The Court reached that conclusion even though Congress could (and later did) reverse *Bailey* by amending the statute to cover possession as well as use. See *United States* v. *O'Brien*, 560 U. S. 218, 232–233 (2010) (discussing statutory amendment known as the "*Bailey* fix"). *Bousley* thus contradicts the contention that the *Teague* inquiry turns only on whether the decision at issue holds that Congress lacks some substantive power.

*Amicus* recognizes that *Bousley* does not fit the theory that, in her view, should control this case. She instead proposes an ad hoc exception, contending that *Bousley* "recognized a separate subcategory of substantive rules" for decisions that interpret statutes (but not those, like *Johnson*, that invalidate statutes). Brief for Court-Appointed *Amicus Curiae* in Support of Judgment Below 40. For support, *amicus* looks to the separation-of-powers doctrine. Her argument is that statutory construction cases are substantive because they define what Congress always intended the law to mean—unlike *Johnson*, which struck down the residual clause regardless of Congress' intent.

That argument is not persuasive. Neither *Bousley* nor any other case from this Court treats statutory interpretation cases as a special class of decisions that are substantive because they implement the intent of Congress. Instead, decisions that interpret a statute are substantive if and when they meet the normal criteria for a substantive rule: when they "alte[r] the range of conduct or the class of persons that the law punishes." *Schriro*, *supra*, at 353.

The separation-of-powers argument that *amicus* raises is also misplaced. *Bousley* noted that the separation of powers prohibits a court from imposing criminal punishment beyond what Congress meant to enact. 523 U. S., at

620–621 ("[I]t is only Congress, and not the courts, which can make conduct criminal"). But a court likewise is prohibited from imposing criminal punishment beyond what Congress in fact has enacted by a valid law. In either case a court lacks the power to exact a penalty that has not been authorized by any valid criminal statute.

Treating decisions as substantive if they involve statutory interpretation, but not if they involve statutory invalidation, would produce unusual outcomes. "It has long been our practice . . . before striking a federal statute as impermissibly vague, to consider whether the prescription is amenable to a limiting construction." *Skilling* v. *United States*, 561 U. S. 358, 405–406 (2010). *Amicus* acknowledges that a decision that saves a vague statute by adopting a limiting construction is substantive, so anyone who falls outside the limiting construction can use that decision to seek relief on collateral review. But *amicus* also contends that, if a court takes the further step of striking down the whole statute as vague, that decision is procedural, so no one can use it to seek relief on collateral review. That arbitrary distinction has no place in the *Teague* framework.

It should be noted, of course, that not every decision striking down a statute is *ipso facto* a substantive decision. A decision that strikes down a procedural statute—for example, a statute regulating the types of evidence that can be presented at trial—would itself be a procedural decision. It would affect only the "manner of determining the defendant's culpability," not the conduct or persons to be punished. *Schriro,* 542 U. S., at 353 (emphasis deleted). A decision of this kind would have no retroactive effect under *Teague* unless it could be considered a "watershed" procedural rule. See *Teague,* 489 U. S., at 311–313. *Johnson,* however, struck down part of a criminal statute that regulates conduct and prescribes punishment. It thereby altered "the range of conduct or the class of per-

sons that the law punishes." *Schriro, supra*, at 353. It follows that *Johnson* announced a substantive rule that has retroactive effect in cases on collateral review.

\*    \*    \*

It may well be that the Court of Appeals on remand will determine on other grounds that the District Court was correct to deny Welch's motion to amend his sentence. For instance, the parties continue to dispute whether Welch's strong-arm robbery conviction qualifies as a violent felony under the elements clause of the Act, which would make Welch eligible for a 15-year sentence regardless of *Johnson*. On the present record, however, and in light of today's holding that *Johnson* is retroactive in cases on collateral review, reasonable jurists at least could debate whether Welch is entitled to relief. For these reasons, the judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 15–6418

_____

## GREGORY WELCH, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[April 18, 2016]

JUSTICE THOMAS, dissenting.

Last Term the Court held in *Johnson* v. *United States*, 576 U. S. \_\_\_ (2015), that because the residual clause of the Armed Career Criminal Act of 1984 (ACCA), 18 U. S. C. §924(e)(2)(B)(ii), "combin[es] indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony," it is unconstitutionally vague. 576 U. S., at \_\_\_ (slip op., at 6). Federal prisoners then sought to invoke *Johnson* as a basis for vacating their sentences in federal collateral review proceedings. See 28 U. S. C. §2255(a).

Today the Court holds that *Johnson* applies retroactively to already final sentences of federal prisoners. That holding comes at a steep price. The majority ignores an insuperable procedural obstacle: when, as here, a court fails to rule on a claim not presented in a prisoner's §2255 motion, there is no error for us to reverse. The majority also misconstrues the retroactivity framework developed in *Teague* v. *Lane*, 489 U. S. 288 (1989), and its progeny, thereby undermining any principled limitation on the finality of federal convictions. I respectfully dissent.

I

As the majority observes with considerable understatement, "[t]his case comes to the Court in a somewhat un-

usual procedural posture." *Ante*, at 6. This case arises from petitioner Gregory Welch's challenge to the Eleventh Circuit's denial of a certificate of appealability. §2253(c)(1). In other words, Welch asks the Court to review the Eleventh Circuit's refusal to allow him to appeal the claims he raised in a motion to vacate his sentence and lost in the District Court. But Welch never claimed that the residual clause was unconstitutionally vague in his §2255 motion, let alone that *Johnson* applies retroactively. Accordingly, courts below addressed neither issue. Indeed, *Johnson* was not even decided when the courts below issued their rulings. Those deficiencies should preclude us from deciding in this case whether *Johnson* is retroactive.

Our role in reviewing the denial of a certificate of appealability is far more circumscribed than normal appellate review. The text of 28 U. S. C. §2253 confirms this. Defendants can appeal their convictions and sentences as a matter of right on direct review, but §2253 deprives courts of appeals of jurisdiction to review the denial of a petitioner's motion for federal postconviction relief unless he obtains a "certificate of appealability." §2253(c)(1). And he can obtain that certificate only if he makes "a substantial showing of the denial of a constitutional right." §2253(c)(2); see *Miller-El* v. *Cockrell*, 537 U. S. 322, 335–336 (2003).

Accordingly, this Court has instructed that review of the denial of a certificate of appealability is a retrospective inquiry into whether the movant's claims, as litigated in the district court, warrant further proceedings—not whether there is any conceivable basis upon which the movant could prevail. Courts must ask whether "reasonable jurists would find *the district court's assessment* of the constitutional claims debatable or wrong." *Slack* v. *McDaniel*, 529 U. S. 473, 484 (2000) (emphasis added). They are to "look to the *District Court's* application of [the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)] to petitioner's constitutional claims and ask whether *that* resolution was debatable." *Miller-El, supra,* at 336 (emphasis added).

Until today, we did not require courts of appeals to consider all possible constitutional issues that might warrant relief as part of this inquiry. Those courts instead looked to how the movant framed his case in his motion to vacate. Even if, for example, a district court denies habeas relief based on procedural default and never reached the merits, the movant must establish not only that the procedural ruling is "debatable" but *also* that his motion "state[d] a valid claim of the denial of a constitutional right." *Slack, supra,* at 484.

Requiring a court of appeals to consider arguments not raised in a §2255 motion is also at odds with how the Court has described the certificate-of-appealability inquiry. The Court has called the decision whether to grant a certificate of appealability a "threshold" inquiry that "forbids" reviewing courts to engage in "full consideration of the factual or legal bases adduced in support of the claims." *Miller-El*, *supra*, at 336. That is because, in the Court's view, the point of "[t]he [certificate of appealability] process [is to] scree[n] out issues unworthy of judicial time and attention and ensur[e] that frivolous claims are not assigned to merits panels." *Gonzalez* v. *Thaler*, 565 U. S. 134, 145 (2012). There would be no surer way to transform this determination into a full-blown merits appeal than to require courts of appeals to consider all conceivable bases for relief that the movant failed to raise.

Welch's failure to raise any *Johnson*-related claim in the District Court should, therefore, bar the Eleventh Circuit and this Court from addressing whether *Johnson* applies retroactively. Welch's §2255 motion omitted any claim

that his sentence was invalid because the ACCA's residual clause is unconstitutionally vague.*  Unsurprisingly, the District Court did not address a vagueness claim that Welch had not raised.  Nor did (or could) the District Court assess whether *Johnson* applies retroactively, for we decided *Johnson* after the District Court ruling.  In sum, when Welch raised the vagueness of the residual clause for the first time in his Eleventh Circuit application for a certificate of appealability, it was too late.

The Government responds to this issue by attempting, in its reply brief in this Court, to "expressly waiv[e] any procedural default defense against petitioner on his *Johnson* claim."  Reply Brief for United States 22.  But this case has not been framed as one involving a "procedural default," which ordinarily refers to the affirmative defense that a petitioner defaulted his claim in some earlier proceeding.  See *McCleskey* v. *Zant*, 499 U. S. 467, 490 (1991) (describing, in the context of a federal habeas petition brought by a state prisoner, "procedural default" as the "presumption against [federal] habeas adjudication . . . of claims defaulted in state court"); see also, *e.g., Jenkins* v. *Anderson*, 447 U. S. 231, 234, n. 1 (1980) (noting that procedural default is an affirmative defense that must be raised); 28 U. S. C. §2254 Rule 5 (requiring the Government to "state whether any claim in the petition is barred by a . . . procedural bar" in the answer to the motion).

Welch instead failed to raise that claim in *this* proceeding by failing to present it in his motion to vacate his sentence.  And the Court of Appeals, when deciding

---

* Welch's §2255 motion did assert that his "robbery under Florida [statutes] is ambiguous, vague, and was without any violence and or physical force," App. 96a, and that Florida robbery "has multi-meanings." *Id.,* at 97a.  But challenging the vagueness of Florida law is quite different from the argument Welch needed to assert a *Johnson* claim: that the residual clause is itself unconstitutionally vague.

whether to grant a certificate of appealability, cannot be expected to look beyond the claims presented in that motion in conducting its threshold inquiry about whether "reasonable jurists would find *the district court's assessment* of the constitutional claims debatable or wrong." *Slack*, 529 U. S., at 484 (emphasis added). Although the Government purports to waive any forfeiture defense now, it cannot alter what was before the Court of Appeals. After Welch failed to raise a *Johnson* claim in his §2255 motion and the Eleventh Circuit denied a certificate of appealability, the Government could not inject the claim into the case.

Rather than grappling with these issues, the majority distorts the standard for reviewing certificates of appealability by asking whether reasonable jurists would debate the "conclusion" that Welch "failed to show any entitlement to relief." *Ante,* at 7. The majority thereby transforms what should be a quick "overview of the *claims in the habeas petition*," *Miller-El,* 537 U. S., at 336 (emphasis added), to a searching review of the "*conclusion*" that a prisoner is not entitled "*any*" collateral relief. *Ante,* at 7 (emphasis added). That is preposterous. The Eleventh Circuit, according to the majority, erred by denying Welch the opportunity to "appeal" a claim that he failed to raise, in part because a decision that did not yet exist when the Eleventh Circuit ruled may entitle him to relief. The majority's view of AEDPA demands judicial clairvoyance; Courts of Appeals can avoid reversal only by inventing arguments on the movant's behalf.

## II

After bypassing what should have been an insurmountable procedural hurdle, the majority then gets the merits wrong. The retroactivity rules the Court adopted in *Teague* v. *Lane*, 489 U. S. 288, generally foreclose prisoners from collaterally challenging their convictions based on

new decisions that postdate their convictions and sentences. The only exceptions to that bar are for decisions that announce a new substantive rule or a new "watershed" procedural rule. See *ante,* at 7–8. All agree that *Johnson* announced a new rule and that it is not a "watershed" procedural rule. See *ante,* at 8. But the rule in *Johnson* also does not satisfy our criteria for substantive rules. The majority concludes otherwise, *ante,* at 8–9, but its approach fails under *Teague*'s own terms and erodes any meaningful limits on what a "substantive" rule is.

### A

The Court has identified two types of substantive rules, and *Johnson*'s rule of decision fits neither description. It is not a new substantive constitutional rule, nor does it narrow the scope of a criminal statute through statutory construction.

### 1

Time and again, the Court has articulated the test for defining a substantive constitutional rule as follows: The rule must "place particular conduct or persons covered by the statute beyond the State's power to punish." *Schriro* v. *Summerlin*, 542 U. S. 348, 352 (2004); see also *Beard* v. *Banks*, 542 U. S. 406, 416 (2004) (similar); *Penry* v. *Lynaugh*, 492 U. S. 302, 330 (1989) (rule is substantive if "the Constitution itself deprives the State of the power to impose a certain penalty"). This is also the test the Court has purported to apply in case after case. See, *e.g., Sawyer* v. *Smith*, 497 U. S. 227, 233, 241 (1990) (prohibiting prosecutors from misleading the jury to believe that it was not responsible for a death sentence was a nonsubstantive rule that did not "place an entire category of primary conduct beyond the reach of the criminal law" or "prohibit imposition of a certain type of punishment for a class of defendants because of their status or offense"). Our prec-

edents thus make clear the distinction between substantive and nonsubstantive constitutional rules. A rule that "*because* [a State] has made a certain fact essential to the death penalty, that fact must be found by a jury," is not substantive; it had no effect on the "range of conduct a State may criminalize." *Schriro*, 542 U. S., at 353–354. But a rule in which this Court "ma[de] a certain fact essential to the death penalty . . . would be substantive"; it would change the range of conduct warranting a death sentence. *Id.,* at 354.

Under these principles, *Johnson* announced a new constitutional rule, but it is not substantive. *Johnson*'s new constitutional rule is that a law is unconstitutionally vague if it "requires a court to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk" of some result. 576 U. S., at ___ (slip op., at 4). Such laws are vague because they simultaneously create "indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify" as the described offense. *Id.,* at ___ (slip op., at 6). Together, those two indeterminacies "produc[e] more unpredictability and arbitrariness than the Due Process Clause tolerates." *Ibid.*

But that rule is not substantive under our precedents. It does not preclude the Government from prohibiting particular conduct or deem any conduct constitutionally protected. The Government remains as free to enhance sentences for federal crimes based on the commission of previous violent felonies after *Johnson* as it was before. Cf. *Butler* v. *McKellar*, 494 U. S. 407, 415 (1990) (deciding that a new rule was not substantive because "[t]he proscribed conduct" was "capital murder, the prosecution of which is, to put it mildly, not prohibited by the rule"). Nor does *Johnson*'s vagueness rule place any class of persons or punishment off limits. There is no category of offender

that Congress cannot subject to an enhanced sentence after *Johnson.* See *James* v. *United States*, 550 U. S. 192, 230 (2007) (Scalia, J., dissenting) (Congress "very easily" could "subjec[t] all repeat offenders to a 15-year mandatory minimum prison term" in differently worded statute (emphasis deleted)). The only constraint *Johnson* imposes is on the *manner* in which the Government can punish offenders. To avoid "fail[ing] to give ordinary people fair notice" or "invit[ing] arbitrary enforcement," 576 U. S., at ___ (slip op., at 3), Congress must be clearer in describing what conduct "otherwise . . . presents a serious potential risk of physical injury to another." 18 U. S. C. §924(e)(2)(B)(ii).

2

*Johnson* also does not fit within the second type of substantive rule this Court has recognized, which consists of "decisions that narrow the scope of a criminal statute by interpreting its terms." *Schriro*, 542 U. S., at 351; see *id.,* at 351–352 (contrasting these rules with "constitutional determinations" that rule out punishing conduct or persons).

The Court has invoked this subset of new rules just once, in *Bousley* v. *United States*, 523 U. S. 614 (1998). *Bousley* held that *Bailey* v. *United States*, 516 U. S. 137 (1995), which interpreted a federal firearms sentencing enhancement to require proof of "'active employment of the firearm'" as an element, applied retroactively. 523 U. S., at 616–617. The Court explained that *Teague*'s bar on retroactively applying "procedural rules" is "inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress." 523 U. S., at 620. Moreover, the Court reasoned, "decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct" share a key commonality with "decisions placing conduct beyond the power of the

criminal law-making authority to proscribe": both "necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal." *Ibid.* (internal quotation marks omitted). The Court thus classified decisions "holding that a substantive federal criminal statute does not reach certain conduct" as substantive. *Ibid.*

I would not so readily assume that *Bousley* applies here. Until today, *Bousley* applied only to new rules reinterpreting the text of federal criminal statutes in a way that narrows their reach. *Johnson* announced no such rule. It announced only that there is no way in which to narrow the reach of the residual clause without running afoul of the Due Process Clause. 576 U. S., at \_\_\_–\_\_\_ (slip op., at 10–12).

The majority protests that applying different retroactivity principles to constitutional and statutory rules produces "unusual outcomes" because a decision interpreting a statute's text to narrow its scope may be retroactive, while a decision declaring the provision unconstitutional might not be. *Ante,* at 14. But such outcomes are an inevitable byproduct of the Court's retroactivity jurisprudence, not a unique consequence of this case. Take a statute allowing the Federal Government to prosecute defendants for "serious crimes involving interstate commerce" of which they were acquitted in state court. See *Bartkus* v. *Illinois,* 359 U. S. 121 (1959) (no double jeopardy bar to such prosecutions). Suppose the Court, concerned that there might be a double jeopardy problem after all, narrowed the meaning of "serious crimes involving interstate commerce" to encompass only felonies that would be subject to a statutory maximum sentence of life imprisonment. Anyone acquitted of a minor felony by the State but convicted by the Federal Government before this Court's narrowing construction could, in the majority's view, seek relief on collateral review under *Bousley*. See *ante,* at 14. But if the

Court ruled that the Double Jeopardy Clause bars *all* federal reprosecutions, I doubt that rule would be retroactive. That rule dictates *when* a defendant may be tried and convicted of certain conduct—not the substance of the crime for which the defendant is tried, or the punishment imposed.

The Court's historical justifications for retroactivity underscore the reasons for treating statutory and constitutional rules differently. The Court in the 1950's "extend[ed] the scope of habeas to all alleged constitutional errors" to "forc[e] trial and appellate courts in both the federal and state system to toe the constitutional mark" in the face of perceived systemic violations. *Mackey* v. *United States*, 401 U. S. 667, 687 (1971) (Harlan, J., concurring in judgments in part and dissenting in part). That development led to the *Teague* framework allowing retroactivity for certain types of constitutional rules. See *Montgomery* v. *Louisiana*, 577 U. S. ___, ___–___ (2016) (Scalia, J., dissenting) (slip op., at 2–3) (recounting history). But this Court has never suggested that lower courts had similar difficulties in interpreting the reach of criminal statutes, such that the retroactivity rules should be the same. Rather, the history suggests that the failure to apply a narrowing construction of a criminal statute is a qualitatively different type of error.

### B

The majority instead determines whether a rule is substantive by looking to the "function of the rule," *ante*, at 10, and asking "whether the new rule itself has a procedural function or a substantive function," *ante,* at 11. This apparently means that courts should divine the *effect* of a new rule and decide whether that effect alters the substantive elements of a crime or sentence. All that matters, the majority says, is that the vagueness rule announced in *Johnson* had the *effect* of invalidating the residual clause

and, as a result of its invalidation, the residual clause "can no longer mandate or authorize any sentence." *Ante,* at 9 ("striking down the residual clause" is what "changed the substantive reach of [ACCA]").

That approach is untenable. It brushes aside the rule of decision, which is where all of our prior precedents begin and end for purposes of applying *Teague.* When deciding whether rules are substantive, our cases have homed in on the rule that would apply not just to the specific statute at hand, but in similar, future circumstances. Thus, just this Term, the Court defined the rule announced in *Miller* v. *Alabama*, 567 U. S. \_\_\_ (2012), as: The Eighth Amendment "prohibit[s] . . . mandatory life without parole for juvenile offenders"—not that Alabama's juvenile-sentencing statute flouts the Eighth Amendment. *Montgomery*, *supra,* at \_\_\_ (slip op., at 14). Likewise, the rule announced in *Ring* v. *Arizona*, 536 U. S. 584 (2002), was that "a sentencing judge, sitting without a jury, [may not] find an aggravating circumstance necessary for imposition of the death penalty"—not that provisions of Arizona's death penalty statute violate the Sixth Amendment. *Schriro*, 542 U. S., at 353 (internal quotation marks omitted; alteration in original). By jettisoning that approach and focusing solely on *Johnson*'s effect (the invalidation of the residual clause), the majority departs from our precedents.

The majority's focus on the *effect* of a decision breaks down all meaningful distinctions between "new" and "old" rules, or "substantive" and "procedural" ones. The first step of the *Teague* inquiry assesses whether the rule is "new" by looking to whether prior precedents dictated the rule of decision—not its effects. See, *e.g., Chaidez* v. *United States*, 568 U. S. \_\_\_, \_\_\_ (2013) (slip op., at 4) (internal quotation marks omitted). But if, as the majority contends, the "function of the rule," *ante,* at 10, is the relevant baseline, then *every* case invalidating a statute or a sen-

tence establishes a "new" rule. The law's invalidation would be a departure from any prior decision that interpreted the law as if it were operative. Likewise, if any decision has the effect of invalidating substantive provisions of a criminal statute, it is a substantive rule under the majority's approach no matter what the reason for the statute's invalidation.

The majority denies that "every decision striking down a statute is *ipso facto* a substantive decision," saying that only when a decision invalidates a provision that "regulates conduct and prescribes punishment" is it retroactive. *Ante*, at 14. But that still transforms innumerable procedural rules into substantive ones. Take a state law that defines the crime of robbery and specifies that only 10 of the 12 jurors need to vote to convict someone of that crime. If this Court were to reverse *Apodaca* v. *Oregon*, 406 U. S. 404 (1972), and hold that the Sixth Amendment requires unanimous jury verdicts, the portion of the statute allowing nonunanimity would be invalid. But assume that the state statute was nonseverable: the Court's jury unanimity rule, undoubtedly "procedural," would have the effect of invalidating not only the portion of the state statute regarding unanimity but also the provision defining the crime of robbery, a provision that "regulates conduct." *Ante,* at 14. To the majority, these effects would make the rule substantive. That approach is mistaken, and would also produce arbitrary results. Suppose most States had similar statutes, but that some had robust severability provisions and others did not. In some States, the decision would be procedural; elsewhere, it would be substantive, producing a patchwork of statute-specific outcomes.

Finally, the majority flips *Teague* on its head with its alternative contention that *Johnson* must have announced a substantive rule because it is "not a procedural decision." *Ante,* at 9. *Teague* is a general rule against retroactivity, see *ante,* at 7–8, and all new rules are barred unless they

fit within the exceptions for substantive or "watershed" procedural rules. 489 U. S., at 310–311 (plurality opinion). To say that a rule is "not . . . procedural" is not enough. And even if it were, the rule in *Johnson* fits better within the Court's descriptions of procedural rules than substantive ones. "Procedural rules . . . are designed to enhance the accuracy of a conviction or sentence by regulating *'the manner of determining* the defendant's culpability.'" *Montgomery*, 577 U. S., at \_\_\_ (slip op., at 9) (quoting *Schriro*, *supra*, at 353). And the rule in *Johnson* regulates only the manner in which Congress defined a sentencing enhancement, not the conduct that triggers the punishment. *E.g., Smith* v. *Goguen*, 415 U. S. 566, 572–573 (1994) (vagueness doctrine "requires legislatures to set reasonably clear guidelines" to give "fair notice or warning" and "prevent arbitrary and discriminatory enforcement" (internal quotation marks omitted)).

## III

Today's opinion underscores a larger problem with our retroactivity doctrine: The Court's retroactivity rules have become unmoored from the limiting principles that the Court invoked to justify the doctrine's existence. Under *Teague* itself, the question whether *Johnson* applies retroactively would be a straightforward "No." If this question is close now, that is only because the Court keeps moving the goalposts.

As the majority observes, the foundations of our approach to retroactivity in collateral review come from Justice Harlan's separate opinions in *Desist* v. *United States*, 394 U. S. 244 (1969), and *Mackey* v. *United States*, 401 U. S. 667. *Ante,* at 7. There, Justice Harlan confronted a now-familiar problem: how to address the consequences of an ever-evolving Constitution. He responded with an approach to retroactivity that placed at the forefront the need for finality in the criminal process. See, *e.g,*

401 U. S., at 682–683.  In his view, very few rules that emerged after a prisoner's conviction—including constitutional rules—warranted disturbing that conviction.  See *id.,* at 686–692.  Justice Harlan saw only "two exceptions": "bedrock procedural" rules, *id.,* at 692–693, and "[n]ew 'substantive due process' rules" removing "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," *id.,* at 692.  As examples of the latter category, he cited such rules as that the First Amendment forbids criminalizing flag burning, that the right to privacy precludes the Government from prosecuting distributors of contraception, and that the "freedom to marry" and equal protection principles immunize couples from being punished for entering into interracial marriages.  *Id.,* at 692, n. 7. These "'substantive due process' rules," Justice Harlan explained, were "on a different footing" because "the writ has historically been available for attacking convictions on such grounds." *Id.,* at 692–693.  Moreover, society has an "obvious interest in freeing individuals for punishment for conduct that is constitutionally protected."  *Id.,* at 693. And granting relief for such claims would not require retrials. *Ibid.*

When *Teague* adopted Justice Harlan's approach, see 489 U. S., at 310 (plurality opinion), it agreed that to preserve "the principle of finality which is essential to the operation of our criminal justice system," *id.,* at 309, "new rules generally should not be applied retroactively to cases on collateral review," *id.,* at 305.  *Teague* thus adopted Justice Harlan's two exceptions for "watershed rules of criminal procedure" and rules that "accord constitutional protection to . . . primary activity." *Id.*, at 311; see *id.,* at 310.

The Court then swiftly discarded the limitations that *Teague* adopted.  *Penry* proclaimed the retroactivity of rules barring certain *punishments*, even though the

Court's constant revision of the Eighth Amendment produces an "ever-moving target of impermissible punishments." *Montgomery*, 577 U. S., at ___ (slip op., at 11) (Scalia, J., dissenting) (emphasis deleted); see *id.,* at ___–___ (slip op., at 10–11). *Bousley* extended retroactive relief for federal prisoners raising statutory claims, not just constitutional ones. See 523 U. S., at 616–617, 620–621. *Montgomery* extended *Teague* to state postconviction proceedings, enshrined *Teague* as a constitutional command, and redefined substantive rules to include rules that require sentencers to follow certain procedures in punishing juveniles. Now the majority collapses *Teague*'s substantive-procedural distinction further, allowing any rule that has the incidental effect of invalidating substantive provisions of a criminal statute to become a substantive rule.

Today's decision, like those that preceded it, professes to venerate Justice Harlan's theory of retroactivity. See *ante,* at 7; *Montgomery*, *supra,* at ___ (slip op., at 8–10). This rings hollow; these decisions spell its ruin. The Court adopted Justice Harlan's approach to retroactivity because it shared his conviction that "there [must] be a visible end to the litigable aspect of the criminal process." *Mackey*, *supra*, at 690; see *Teague*, *supra*, at 310 (plurality opinion) (similar). With the Court's unprincipled expansion of *Teague*, every end is instead a new beginning.

*　*　*

For these reasons, I respectfully dissent.