[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Parker,* Slip Opinion No. 2019-Ohio-3848.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-3848

THE STATE OF OHIO, APPELLANT, *v.* PARKER, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Parker,* Slip Opinion No. 2019-Ohio-3848.]

*Postconviction relief—Trial court correctly determined that defendant's petition was untimely and did not meet either exception in R.C. 2953.23(A)—Court of appeals' judgment reversed.*

(No. 2017-1575—Submitted February 19, 2019—Decided October 9, 2019.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 105472, 2017-Ohio-7484.

_____

KENNEDY, J.

{¶ 1} In this discretionary appeal from the Eighth District Court of Appeals, we confront a straightforward question of statutory interpretation: Does R.C. 2953.23(A) vest a common pleas court with authority to grant relief on an untimely or successive petition for postconviction relief when the petition asserts a claim based on a new state or federal right recognized by the Supreme Court of Ohio? Based on the plain and unambiguous language of the statute, the answer is no.

**{¶ 2}** R.C. 2953.23(A) provides limited exceptions to the statutory bar on untimely or successive petitions for postconviction relief. But although the General Assembly permits a common pleas court to entertain an untimely or successive petition based on a new state or federal right recognized by the United States Supreme Court, it provided no exception allowing an untimely or successive petition to be granted based on a new decision of this court.

**{¶ 3}** Accordingly, the trial court did not err in denying appellee Corey J. Parker's untimely request for postconviction relief. Therefore, we reverse the judgment of the court of appeals.

### Facts and Procedural History

**{¶ 4}** In 2011, Parker pleaded guilty to aggravated robbery and having a weapon while under a disability. The aggravated-robbery conviction carried a notice-of-prior-conviction specification; pursuant to R.C. 2901.08(A), Parker's prior adjudication of delinquency for felonious assault was treated as a prior conviction. The trial court imposed an aggregate sentence of eight years in prison, and because of the specification, the entire sentence is mandatory. *See* R.C. 2929.13(F)(6).

**{¶ 5}** The court of appeals affirmed Parker's convictions and sentence in 2012, rejecting the argument that R.C. 2901.08(A) is unconstitutional because it treats a prior juvenile-delinquency adjudication as a prior conviction for purposes of enhancing a prison sentence for a subsequent offense. 8th Dist. Cuyahoga No. 97841, 2012-Ohio-4741, ¶ 25.

**{¶ 6}** In 2013, we denied review, 134 Ohio St.3d 1471, 2013-Ohio-553, 983 N.E.2d 370, and denied reconsideration, 135 Ohio St.3d 1417, 2013-Ohio-1622, 986 N.E.2d 32.

**{¶ 7}** In 2016, this court announced *State v. Hand*, holding that R.C. 2901.08(A) violates the Due Process Clauses of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution because it is

"fundamentally unfair" to treat a juvenile adjudication as a prior conviction that enhances the sentence for a subsequent offense. 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, paragraph one of the syllabus.

{¶ 8} Parker then moved to vacate his mandatory sentence, arguing that enhancing his adult sentence based on a prior juvenile-delinquency adjudication was unconstitutional pursuant to *Hand*. The trial court denied relief.

{¶ 9} On appeal, the Eighth District Court of Appeals construed the motion to vacate as a petition for postconviction relief, 2017-Ohio-7484, 96 N.E.3d 1183, ¶ 10, and explained that the rule announced in *Hand* is a "new constitutional 'substantive rule' " that applies retroactively to cases that were final before its announcement, *id.* at ¶ 22. The appellate court held that "Parker has established, under R.C. 2953.21(A)(1) that while he preserved the error throughout the appellate process, he was unavoidably prevented from presenting this claim for relief until 2016." *Id*. at ¶ 17. Implicit in this analysis is a determination that the statutory bar on untimely or successive petitions did not apply. The court of appeals therefore reversed the trial court's denial of Parker's motion to vacate the mandatory sentence.

{¶ 10} We accepted the state's discretionary appeal.

**Positions of the Parties**

{¶ 11} Appellant, the state of Ohio, maintains that although the court of appeals correctly construed Parker's motion as a petition for postconviction relief, it grafted a new exception onto R.C. 2953.23(A)(1) when it suggested that a new constitutional right recognized by the Supreme Court of Ohio could be asserted in an untimely or successive petition. It contends that "[R.C.] 2953.23 is unambiguous: only a new right established by a United States Supreme Court decision, and no other court, confers jurisdiction upon a court to consider an untimely or successive petition." The state argues that even if the statute permitted the trial court to entertain the petition in this case, *Hand*, 149 Ohio St.3d 94, 2016-

Ohio-5504, 73 N.E.3d 448, does not apply retroactively to convictions that were final when that decision was announced, because *Hand* did not announce a new substantive rule or a watershed rule of criminal procedure.

{¶ 12} Parker concedes that R.C. 2953.23 "provides no jurisdiction" for a motion seeking sentencing relief based on *Hand*, and he therefore does not contest the state's argument that a new constitutional ruling by this court will not sustain an untimely or successive petition for postconviction relief. Nonetheless, he contends that *Hand* established a new substantive rule and "necessarily applies retroactively to correct sentences improperly mandated under R.C. 2901.08(A)." Parker notes that the constitutional ruling in *Hand* was premised on the fundamental unfairness of equating juvenile-delinquency adjudications with adult convictions and that *Hand* articulated a new substantive rule that forbids the state from imposing a type of punishment on a specific class of offenders. He maintains that this court has the authority to apply its rulings retroactively regardless of whether they are deemed procedural or substantive, and he argues that his interest against serving an unconstitutional sentence supersedes any interest that the state might have in preserving its finality. Parker therefore contends that the trial court erred in failing to resentence him in accordance with *Hand*.

{¶ 13} This appeal, then, presents two issues: (1) whether Parker's motion to vacate his mandatory sentence is barred as an untimely petition for postconviction relief and, if not, (2) whether the new constitutional ruling in *Hand* applies retroactively to cases that were final at its announcement. Our resolution of the first issue makes it unnecessary to decide the second.

**Law and Analysis**

{¶ 14} In 1965, the General Assembly enacted R.C. 2953.21 et seq., Am.S.B. No. 383, 131 Ohio Laws, Part II, 1610, as emergency legislation in response to docket congestion caused by a growing number of petitions seeking the writ of habeas corpus and in light of United States Supreme Court decisions

4

requiring states to provide meaningful postconviction review of prisoner claims alleging the violation of federal constitutional rights. Von Ohlen, *The Postconviction Review Dilemma in Ohio*, 44 Ohio St.L.J. 537, 537, 540-541 (1983). In uncodified language, the General Assembly deemed this statutory remedy to be "the best method of protecting constitutional rights of individuals and, at the same time, providing a more orderly method of hearing such matters." Section 2, 131 Ohio Laws, Part II, at 1611.

{¶ 15} Relevant here, R.C. 2953.21(A)(1)(a) permits a petitioner to collaterally attack his or her judgment of conviction on the grounds that "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." With the exception of an appeal, a petition for postconviction relief is "the exclusive remedy by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case." R.C. 2953.21(K).

{¶ 16} We have explained that "[c]ourts may recast irregular motions into whatever category necessary to identify and establish the criteria by which the motion should be judged." *State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431, ¶ 12. And we have held that pursuant to R.C. 2953.21(A)(1), "where a criminal defendant, subsequent to his or her direct appeal, files a motion seeking vacation or correction of his or her sentence on the basis that his or her constitutional rights have been violated, such a motion is a petition for postconviction relief as defined in R.C. 2953.21." *State v. Reynolds*, 79 Ohio St.3d 158, 160, 679 N.E.2d 1131 (1997); *accord Schlee* at ¶ 12 (following *Reynolds* and construing a Civ.R. 60(B) motion for relief from judgment as a petition for postconviction relief).

{¶ 17} Parker's motion to vacate was filed subsequent to his direct appeal and sought to vacate his mandatory sentence on the basis that it was

unconstitutional in light of this court's decision in *Hand*. It therefore was properly recast as a petition for postconviction relief.

{¶ 18} R.C. 2953.21(A)(2) requires a petition for postconviction relief to be filed no later than 365 days after the trial transcript is filed in the court of appeals on direct appeal or, if no appeal is taken, no later than 365 days after the expiration of the time for filing an appeal. Parker sought postconviction relief more than four years after the filing of the transcript, and his filing is untimely.

{¶ 19} A trial court lacks authority to grant an untimely or successive petition unless one of two statutory exceptions applies. R.C. 2953.23(A); *State v. Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶ 36.

{¶ 20} The first exception provided by R.C. 2953.23(A)(1) permits the trial court to entertain an untimely or successive petition for postconviction relief if

> [b]oth of the following apply:
>
> (a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, *the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation,* and the petition asserts a claim based on that right.
>
> (b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no

> reasonable factfinder would have found the petitioner eligible for the death sentence.

(Emphasis added.) The second exception applies when the results of DNA testing establish by clear and convincing evidence the petitioner's "actual innocence" of a felony offense of which the petitioner was convicted or of an aggravating circumstance that is the basis of a death sentence. R.C. 2953.23(A)(2).

{¶ 21} Whether one of these exceptions applies in this case presents a question of statutory interpretation. Our duty in construing a statute is to determine and give effect to the intent of the General Assembly as expressed in the language it enacted. *State v. J.M.*, 148 Ohio St.3d 113, 2016-Ohio-2803, 69 N.E.3d 642, ¶ 7. If the language of a statute is plain and unambiguous and conveys a clear and definite meaning, then there is no need for this court to resort to the rules of statutory interpretation; rather, we apply the statute as written. *State v. Kreischer*, 109 Ohio St.3d 391, 2006-Ohio-2706, 848 N.E.2d 496, ¶ 12.

{¶ 22} Neither statutory exception applies in this case. Parker did not assert the discovery of new evidence, the recognition of a new federal or state right by the Supreme Court of the United States, or his exoneration by DNA testing. Rather, Parker sought to vacate the mandatory sentence imposed on him "in light of the Ohio Supreme Court's decision in *State v. Hand*." The General Assembly, however, has not provided any exception for an untimely or successive petition that seeks relief based on a new state or federal right recognized by this court. And contrary to the holding of the Eighth District Court of Appeals, 2017-Ohio-7484, 96 N.E.3d 1183, at ¶ 17, there is no exception in the statute for a petitioner who was "unavoidably prevented" from succeeding on a preserved constitutional claim by an erroneous decision of the court of appeals. Accordingly, the trial court lacked statutory authority to grant Parker's untimely request for postconviction relief.

**{¶ 23}** The analysis of the dissenting jurists cannot be squared with the plain meaning of R.C. 2953.23(A), our well-established precedent construing it, and basic principles undergirding the finality of criminal sentencing in this state.

**{¶ 24}** The first dissenting opinion presents a novel theory—one so novel that it was neither presented to the court of appeals nor argued in this court. This court depends on the adversarial process to frame the issues for review; " ' "appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them." ' " (Brackets added in *Bodyke*.) *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part), quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983). As we observed in *Sizemore v. Smith,* "justice is far better served when [this court] has the benefit of briefing, arguing, and lower court consideration before making a final determination." 6 Ohio St.3d 330, 333, 453 N.E.2d 632 (1983), fn. 2. All three are lacking here.

**{¶ 25}** These principles do not mean that we must permit an obvious error to go uncorrected when it has affected the outcome of the proceeding and would create a manifest miscarriage of justice. We have discretion to notice and correct plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22.

**{¶ 26}** But the first dissent does not rely on the plain-error rule— presumably because even Parker does not dispute that a petition for postconviction relief would be untimely in his circumstances. Nonetheless, it asserts that R.C. 2953.23(A)(1)(a) must be read as permitting an untimely or successive petition when "the United States Supreme Court has recognized a new federal *right,* or [*the Ohio Supreme Court*] *has recognized a new* state right, that applies retroactively to persons in the petitioner's situation" (italicized words added by the first dissenting

8

opinion). It insists that it would be "completely illogical" for the General Assembly to deny untimely or successive "petitions based on new state rights recognized by this court." Dissenting opinion, O'Connor, C.J., at ¶ 54. It also contends that adding nine words to the statute is necessary to avoid rendering two of its words—"or state"—inoperative.

{¶ 27} The first dissent's reliance on the absurdity doctrine is misplaced. The absurdity doctrine is a limited exception to the plain-meaning rule, applying when the unambiguous language of a statute would yield an obviously unintended result—that is, "a disposition that no reasonable person could intend." Scalia & Garner, *Reading Law*: *The Interpretation of Legal Texts* 237 (2012). But it is not obviously unintended that R.C. 2953.23(A)(1)(a) does not apply to time-barred and successive petitions asserting new federal and state rights recognized *by this court*, because the statute expressly applies to petitions relying on new decisions of the United States Supreme Court *and no other court*. It may make for better policy to allow postconviction petitions based on new decisions of this court, but it is not "completely illogical" for the General Assembly to decide not to do so.

{¶ 28} But even if the plain-language application of a statute would yield an absurd result, the absurdity doctrine does not permit a court to correct the absurdity unless it is "reparable by changing or supplying a particular word or phrase whose inclusion or omission was obviously a technical or ministerial error * * *. The doctrine does not include substantive errors arising from a drafter's failure to appreciate the effect of certain provisions." *Id.* at 238. That is, the absurdity doctrine does not grant a court free reign to rewrite the substance of the statute. But the first dissent would change the meaning of R.C. 2953.23(A)(1)(a) by adding a new exception to the bar on untimely and successive petitions that the legislature omitted.

{¶ 29} But more importantly, the first dissent cannot say what the General Assembly obviously intended and can only guess at what statute it would have

written had it been aware of the alleged absurdity; although the legislature might have added the nine words that the first dissent favors, it just as easily might have narrowed the statute by deleting two words—"or state"—or it might have expanded the statute further by authorizing an untimely petition when this court has recognized either a new federal right or a new state right. (We did both in *Hand*.) The first dissent fails to show that its construction is the only one the General Assembly could have intended.

{¶ 30} The first dissent also contends that "[b]ecause it is well established that we seek to give meaning to every word in a statute, we should avoid the majority's view, which would render R.C. 2953.23(A)(1)(a)'s reference to 'state right' a dead letter." Dissenting opinion, O'Connor, C.J., at ¶ 52. That might be true if we were construing an ambiguous statute. But by the first dissent's own admission in resorting to the absurdity doctrine, R.C. 2953.23(A)(1)(a) is unambiguous, and to construe what is already plain and unambiguous is legislation, not statutory construction, *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, ¶ 11. We may not construe a statute to avoid rendering part of it meaningless or inoperative if that is " 'manifestly required' " by the language that the General Assembly enacted. *State v. Polus*, 145 Ohio St.3d 266, 2016-Ohio-655, 48 N.E.3d 553, ¶ 12, quoting *State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn.*, 95 Ohio St. 367, 373, 116 N.E. 516 (1917). That is, if the legislature enacted a dead-letter law, it is manifestly required that we not try to interpret it into life.

{¶ 31} Our role in the exercise of the judicial power granted to us by the Ohio Constitution is to say what the law is. It is the legislative branch of government that has the power to enact, amend, and repeal statutes, Article II, Section 1 of the Ohio Constitution, and "[t]his lawmaking prerogative cannot be delegated to or encroached upon by the other branches of government," *Toledo v. State*, 154 Ohio St.3d 41, 2018-Ohio-2358, 110 N.E.3d 1257, ¶ 26. And

fundamental to maintaining the separation of powers is our recognition that "a court may not rewrite the plain and unambiguous language of a statute," *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 20.

{¶ 32} We therefore reject the first dissenting opinion's invitation to rewrite R.C. 2953.23(A)(1)(a) to permit an untimely or successive petition if "the United States Supreme Court recognized a new federal *right,* or [*the Ohio Supreme Court*] *has recognized a new* state right, that applies retroactively to persons in the petitioner's situation." If the General Assembly wishes to amend the statute to add these nine italicized words, it may do so. We may not and will not amend it by judicial fiat.

{¶ 33} The second and third dissenting opinions fare no better. The second dissent would construe Parker's motion to vacate as a motion for relief from judgment pursuant to Civ.R. 60(B)(5). That view runs counter to our decision in *Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431, at ¶ 12, as well as R.C. 2953.21(K), which provides that with the exception of an appeal, a petition for postconviction relief is "the *exclusive remedy* by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case." (Emphasis added.)

{¶ 34} The third dissenting opinion would allow Parker to avoid the statutory bar by applying our void-sentencing doctrine, asserting that a sentence entered in violation of the United States Constitution is void. It relies on *Montgomery v. Louisiana*, ___U.S.___, 136 S.Ct. 718, 731, 193 L.Ed.2d 599 (2016), for the proposition that "if the federal Constitution grants a state prisoner a postconviction remedy, a state court is obligated to provide such relief." Dissenting opinion, Stewart, J., at ¶ 85. But that is not what the United States Supreme Court said in that case. The Supreme Court held in *Montgomery* that a state collateral-review court must entertain a claim asserting the violation of federal constitutional rights but only if the state's "collateral proceeding is open to a claim controlled by

federal law." *Id*. at __, 136 S.Ct. at 731. "[A] State may not deny a controlling right asserted under the Constitution, *assuming the claim is properly presented in the case*." (Emphasis added.) *Id*. at __, 136 S.Ct. at 732. Or put differently, if the state provides for collateral review in which federal constitutional claims are cognizable, then the federal right must be enforced. In *Montgomery*, Louisiana's collateral-review procedures *were open* to claims that a sentence is illegal as in violation of the Eighth Amendment, *id*., but the court nonetheless made a point to differentiate such a claim from those brought under the state postconviction-relief statute and those seeking to correct a sentence that was illegal because it was unauthorized by statute, *id*. at __, 136 S.Ct. at 726.

{¶ 35} This court has never held that a motion to correct a void sentence provides a vehicle for correcting a sentence that allegedly violates the protections of the United States Constitution. Rather, our void-sentencing doctrine applies only when a trial court has entered a sentence that is not authorized by statute, *see State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 26, and therefore, a proceeding to correct a void sentence is not "open to a claim controlled by federal law," *Montgomery* at __, 136 S.Ct. at 731. The sentencing court in this case did not fail to impose a statutorily mandated term in sentencing Parker but, rather, *complied* with the applicable statute. And in any case, contrary to the third dissenting opinion's assertion, Parker's sentence is not void on its face—the entry does not state that the prior conviction was a juvenile adjudication, and resort to other evidence in the record is needed to reach that conclusion.

{¶ 36} In the end, Parker had a prior opportunity to litigate his constitutional claim on direct appeal but was unsuccessful. His convictions and sentence are now final, and principles of res judicata bar relitigation of the same constitutional claim in a collateral attack on his sentence, notwithstanding a new decision of this court. *State v. Szefcyk*, 77 Ohio St.3d 93, 95-96, 671 N.E.2d 233 (1996) ("There is no

merit to [the] claim that *res judicata* has no application where there is a change in the law due to a judicial decision of this court").

## Conclusion

**{¶ 37}** The General Assembly provides an offender with a limited time period to collaterally attack his or her judgment of conviction, and R.C. 2953.23(A) bars relief on an untimely or successive petition for postconviction relief except in the narrow circumstances expressed in the statute. In doing so, the legislature necessarily struck a balance between its purpose "to provide a remedy for violation of constitutional rights," *State v. Lester*, 41 Ohio St.2d 51, 56, 322 N.E.2d 656 (1975), and the public policy favoring the finality of judgments of conviction, *Szefcyk* at 95. It is the role of the legislature to weigh these competing policy concerns and make the public policy of this state; "[o]ur role, in the exercise of the judicial power granted to us by the Constitution, is to interpret the law that the General Assembly enacts," *State v. Taylor*, 138 Ohio St.3d 194, 2014-Ohio-460, 5 N.E.3d 612, ¶ 14.

**{¶ 38}** Upon review of the language enacted by the General Assembly, it is manifest that neither of the exceptions for an untimely or successive petition for postconviction relief applies in this case. The trial court properly denied Parker postconviction relief, and we therefore reverse the judgment of the Eighth District Court of Appeals.

Judgment reversed.

DEWINE, J., concurs.

FRENCH and FISCHER, JJ., concur in judgment only.

O'CONNOR, C.J., dissents, with an opinion.

DONNELLY, J., dissents, with an opinion.

STEWART, J., dissents, with an opinion.

_____

**O'CONNOR, C.J., dissenting.**

{¶ 39} Appellee, Corey J. Parker, was convicted of aggravated robbery and having a weapon while under a disability. He had a prior juvenile adjudication of delinquency, which was treated as a prior conviction under R.C. 2901.08(A) so that the eight-year prison sentence he received was mandatory, *see* R.C. 2929.13(F)(6). He argued in his direct appeal at the court of appeals and in a discretionary-appeal petition in this court that R.C. 2901.08(A) was unconstitutional because it treated a prior juvenile adjudication as a prior conviction. *See State v. Parker*, 8th Dist. Cuyahoga No. 97841, 2012-Ohio-4741, ¶ 25. This court declined to accept his discretionary appeal. 134 Ohio St.3d 1471, 2013-Ohio-553, 983 N.E.2d 370. Several years later, however, we accepted another defendant's assertion of that argument and declared the statute unconstitutional. *See State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, paragraph one of the syllabus.

{¶ 40} Parker now understandably seeks relief based on *Hand*. But the majority shuts the door on him before he can even have the merits of his claim considered by a court. It does so based on a materially flawed view of a statute, and overall, its conclusion reflects a mistaken view of this court's authority in relation to that of the United States Supreme Court.

{¶ 41} R.C. 2953.23(A)(1)(a) provides that an untimely or successive petition may be considered if "the United States Supreme Court recognized a new federal or *state right* that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right." (Emphasis added.) The lead opinion notes that the General Assembly determined this statute to be " 'the best method of protecting constitutional rights of individuals.' " Lead opinion at ¶ 14, quoting Am.S.B. No. 383, Section 2, 131 Ohio Laws, Part II, 1610, 1611. But the majority also says that an untimely petition based on *Hand* does not satisfy R.C. 2953.23(A)(1)(a), because that provision refers only to decisions of the United States Supreme Court, not this court.

{¶ 42} The statute's reference to a "state right" makes no sense if R.C. 2953.23(A)(1)(a) does not apply to petitions based on decisions of this court. It is universally understood that the United States Supreme Court does not recognize new rights under state law, much less make them retroactive. The United States Supreme Court may recognize a new *federal* right, thereby *changing* state law by overriding inconsistent state law through the Fourteenth Amendment or the Supremacy Clause, but that is not the same as recognizing a new *state* right. In the rare situation in which the United States Supreme Court does rule on the meaning of a state law that has not already been addressed by the state's highest court, it seeks only to predict how that state's highest court would interpret the state law, and even then, the state's highest court may subsequently override the United States Supreme Court's decision by interpreting the law differently. As a result, the majority's view of R.C. 2953.23(A)(1)(a) results in an impossibility and is absurd. The United States Supreme Court does not issue decisions authoritatively recognizing new state rights; that would run against our federal system and usurp Ohio's sovereignty. The majority ignores this impossibility and treats this court's decisions on questions of Ohio law as inferior to those of the United States Supreme Court.

{¶ 43} An individual's constitutional rights are guaranteed by both the United States and Ohio Constitutions, and this court interprets both. The majority improperly reads R.C. 2953.23(A)(1)(a) as minimizing this court's role and authority in constitutional jurisprudence. By the General Assembly's own explanation, the statutory remedy for postconviction relief was intended to protect the constitutional rights of individuals. 131 Ohio Laws, Part II, at 1611. The majority fails to honor that intent.

{¶ 44} I would interpret R.C. 2953.23(A)(1)(a) as permitting Parker's untimely petition, which is based on a decision issued by this court recognizing a new right under state law, thereby giving effect to the General Assembly's decision

to include the term "state right" in the statute as a basis for permitting an untimely petition. As a result, I would also consider the state's second proposition of law regarding whether this court's decision in *Hand* applies retroactively, and I would hold that it does.

{¶ 45} For these reasons, I would affirm the judgment of the Eighth District Court of Appeals. I respectfully dissent.

## I. R.C. 2953.23(A)(1)(a)

{¶ 46} R.C. 2953.23(A)(1)(a) provides that an untimely or successive petition for postconviction relief may be considered if "the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation." As its first proposition of law, the state asserts that Parker's petition seeking retroactive application of this court's decision in *Hand* was not permitted, because "[a] decision by the Supreme Court of Ohio that was rendered after the deadline for filing a timely petition or after the filing of an earlier petition does not confer jurisdiction upon a court to consider an untimely or successive petition for post-conviction relief pursuant to R.C. 2953.23."

### *A. The Majority's View of R.C. 2953.23(A)(1)(a) Is Absurd*

{¶ 47} In interpreting a statute, we first look to the language of the statute. *State v. Chappell*, 127 Ohio St.3d 376, 2010-Ohio-5991, 939 N.E.2d 1234, ¶ 16. "Where the meaning of the statute is clear and definite, it must be applied as written." *Id.* But an exception to the plain-meaning rule applies when application of the plain language of the statute would lead to an absurd or unreasonable result. *See State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 29, quoting *State v. Wells*, 91 Ohio St.3d 32, 34, 740 N.E.2d 1097 (2001) (" 'statutes will be construed to avoid unreasonable or absurd consequences' "). In *White*, for example, we declined to apply a firearm specification to the defendant, who was a

police officer at the time of the crime, because doing so would not have been just or reasonable given his obligations as a police officer. *Id.* at ¶ 33-34.[1]

{¶ 48} The majority's view of R.C. 2953.23(A)(1)(a) plainly leads to an absurd result. Although Parker seeks retroactive application of the new rule of state law this court announced in *Hand*, the majority concludes that the statute permits an untimely or successive petition based on a decision recognizing a new retroactive "federal or state right" only if the decision was issued by the United States Supreme Court. But that makes no sense. It is well established that this court has the final say on the meaning of state law, including, of course, the Ohio Constitution. *See West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236, 61 S.Ct. 179, 85 L.Ed. 139 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted"); *Johnson v. Fankell*, 520 U.S. 911, 916, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997) ("Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State"). This court has held that when a federal court interprets Ohio law, it implicates—and if it errs, it usurps—Ohio's sovereignty. *See Scott v. Bank One Trust Co., N.A.*, 62 Ohio St.3d 39, 42, 577 N.E.2d 1077 (1991) ("The state's sovereignty is unquestionably implicated when federal courts construe state law. If the federal court errs, it applies law other than Ohio law, in derogation of the state's right to prescribe a 'rule of decision' ").

---

1. *See also Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 35 (explaining the absurd-results exception by stating that "it is the function of courts to construe statutory language to effect a just and reasonable result"); *State ex rel. Cooper v. Savord*, 153 Ohio St. 367, 92 N.E.2d 390 (1950), paragraph one of the syllabus ("The General Assembly will not be presumed to have intended to enact a law producing unreasonable or absurd consequences. It is the duty of the courts, if the language of a statute fairly permits or unless restrained by the clear language thereof, so to construe the statute as to avoid such a result").

**{¶ 49}** The United States Supreme Court may recognize a new *federal* right, thereby *changing* state law. *See, e.g.*, *Brown v. Bd. of Edn.*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). But that is not the same as recognizing a new *state* right; the new federal right overrides inconsistent state law through the Fourteenth Amendment or the Supremacy Clause of the United States Constitution. In the rare situation in which the United States Supreme Court does rule on the meaning of a state law that has not already been addressed by the state's highest court, it seeks only to predict how that state's highest court would interpret the state law. *See West* at 236-238. And even then, the state's highest court may subsequently override the United States Supreme Court's decision by interpreting the law differently. *See id.* at 237-238.[2]

**{¶ 50}** These concepts lie at the heart of our federal system of government. The majority's view of R.C. 2953.23(A)(1)(a) undermines Ohio's sovereignty and the principles of federalism by effectively rendering this court inferior to the United States Supreme Court with respect to the interpretation of Ohio law. It also renders the "state right" language in the statute a dead letter. Application of the absurd-results exception to the plain-language rule of statutory construction is therefore necessary.

### B. R.C. 2953.23(A)(1)(a) Permits Parker's Petition

**{¶ 51}** In light of the above, it is necessary to turn to principles of statutory interpretation. "The primary goal in construing a statute is to ascertain and give effect to the intent of the legislature." *Chappell*, 127 Ohio St.3d 376, 2010-Ohio-5991, 939 N.E.2d 1234, at ¶ 16.

---

2. The United States Supreme Court is fully aware that it can utilize a state's certified-question procedure, and it has done so when faced with making an important decision on a question of state law. *E.g.*, *Fiore v. White*, 528 U.S. 23, 25, 120 S.Ct. 469, 145 L.Ed.2d 353 (1999) (invoking Pennsylvania Supreme Court's certification procedure to obtain opinion on question of state law); *see also* S.Ct.Prac.R. 5.04, 9.01, and 9.05 through 9.08 (this court's rules for certification of questions of state law from federal courts).

**{¶ 52}** Because it is well established that we seek to give meaning to every word in a statute, we should avoid the majority's view, which would render R.C. 2953.23(A)(1)(a)'s reference to "state right" a dead letter. *See State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.*, 131 Ohio St.3d 478, 2012-Ohio-1484, 967 N.E.2d 193 ¶ 18-19, quoting *State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn.*, 95 Ohio St. 367, 373, 116 N.E. 516 (1917) ("Venerable principles of statutory construction require that in construing statutes, we must give effect to every word and clause in the statute. * * * 'No part [of the statute] should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative' " [brackets sic]).[3]  Properly construed, R.C. 2953.23(A)(1)(a) permits an untimely petition based on a decision of this court.

**{¶ 53}** The best indicator of the General Assembly's intent in enacting R.C. 2953.23(A)(1)(a) is the fact that the statute includes a reference to decisions recognizing new federal *or state* rights.  This is a clear signal that the legislature sought to make sure that when a decision recognizes a new right—whether it is based on federal or state law—that applies retroactively, inmates whose convictions are final are permitted to file postconviction petitions seeking application of that decision to their cases.  Indeed, the General Assembly has authorized the filing of petitions for postconviction relief that claim that a judgment of conviction is void or voidable under "the Ohio Constitution or the Constitution of the United States." R.C. 2953.21(A)(1)(a).  This is further evidence that the General Assembly seeks to place the two constitutions on equal footing with respect to the right to seek postconviction relief.

---

3. *See also State v. Arnold*, 61 Ohio St.3d 175, 178, 573 N.E.2d 1079 (1991), quoting *Turley v. Turley*, 11 Ohio St. 173, 179 (1860), quoting *Commonwealth v. Alger*, 61 Mass. 53, 89 (1851) (" 'It is a cardinal rule of statutory construction that * * * [a statute] "shall be * * * expounded, if practicable, as to give some effect to every part of it" ' " [ellipses and brackets sic]); *accord Ford Motor Co. v. Ohio Bur. of Emp. Servs.*, 59 Ohio St.3d 188, 190, 571 N.E.2d 727 (1991).

{¶ 54} By contrast, the majority turns R.C. 2953.23(A)(1)(a)'s explicit reference to decisions recognizing a new "state right" into a nullity. Moreover, it would be completely illogical for the General Assembly to permit what the majority believes it has permitted: untimely or successive petitions based on new federal rights recognized by the United States Supreme Court but not such petitions based on new state rights recognized by this court. The majority's view of R.C. 2953.23(A)(1)(a) presupposes that the General Assembly believed that federal rights are somehow more important—and therefore warrant retroactive application—than rights emanating from the Ohio Constitution. The majority's view of the statute also renders it out of step with the statutes and rules of the majority of other states, which clearly permit petitions for postconviction relief seeking the retroactive application of state-court decisions based on state law.[4]

{¶ 55} Finally, interpreting R.C. 2953.23(A)(1)(a) as permitting untimely petitions based on decisions of this court would do the least damage to the statute. Reading the statute as the majority does, so that the reference to "state right" is meaningless, materially narrows the substantive scope of the statute. The majority eliminates a whole category of new rights—new rights recognized under state law—as a permissible basis of an untimely petition. By contrast, reading the statute as permitting petitions seeking retroactive application of new state rights based on

---

4. *See* Alaska Stat. 12.72.010(7); Ariz.R.Crim.P. 32.1(g); Colo.Rev.Stat.Ann. 18-1-410(1)(f); Conn.Gen.Stat.Ann. 52-470(c) and (d); Del.Super.Ct.R.Crim.P. 61(d)(2)(ii) and 61(i)(1); Fla.R.Crim.P. 3.850(b)(2); Ga.Code Ann. 9-14-42(c)(3); Ky.R.Crim.P. 11.42(10)(b); La.Code Crim.P. 930.8(A)(2); Me.Rev.Stat.Ann., Title 15, Sections 2128(3) and 2128-B(1)(B); Md.Ann.Code Crim.P. 7-106(c)(2); Mich.Ct.R. 6.502(G)(2) and 6.508(D)(2); Minn.Stat.Ann. 590.01(4)(b)(3); Miss.Stat.Ann. 99-39-5(2)(a)(i) and 99-39-23(6); Neb.Rev.Stat.Ann. 29-3001(4)(d); N.J.R.Crim.P. 3:22-4(a)(3) and (b)(2)(A) and 3:22-12(a)(2)(A); N.M.R.Crim.P. 5-802(I)(2) and 5-803(G)(2); N.Y.Crim.P.Law 440.10(2)(a) and (3)(b), 440.20(2) and (3), and 440.40(2) and (3); N.C.Gen.Stat.Ann. 15A-1415(b)(7); N.D.Cent.Code Ann. 29-32.1-01(1)(f); 42 Pa.Consolidated Stat.Ann. 9545(b)(1)(iii); S.C.Code Ann. 17-27-45(B); S.D.Codified Laws 21-27-5.1; Tenn.Code Ann. 40-30-102(b)(1), 40-30-106(g)(1), and 40-30-117(a)(1); Tex.Code Crim.P. 11.07(4)(a)(1) and (b) and 11.071(5)(a)(1) and (d); Utah Code Ann. 78b-9-104(1)(f); Wash.Rev.Code Ann. 10.73.100(6); W.V.Code Ann. 53-4a-1(d).

decisions of this court would *preserve* the substantive scope of the statute, as defined by the General Assembly, which intended the statute to apply when a new "federal or state right" has been recognized.

{¶ 56} R.C. 2953.23(A)(1)(a) therefore permits an untimely or successive petition when the United States Supreme Court has recognized a new federal right, or this court has recognized a new state right, that applies retroactively to persons in the petitioner's situation. I would therefore hold that the trial court should have considered the merits of Parker's petition.

*C. The Lead Opinion's Reasons for Refusing to Apply the Absurd-Results Exception Are Unconvincing*

{¶ 57} Nobody would disagree with the lead opinion's observation that "[o]ur role in the exercise of the judicial power granted to us by the Ohio Constitution is to say what the law is," lead opinion at ¶ 31. But as a practical matter, this means that we are required to address difficult issues head-on. Here, that requires us to take a fair look at the statute. In doing so, we are required to recognize relevant precedent of this court and address whether—and, if so, how— it should be applied to the statute. The lead opinion chooses to sidestep important aspects of that work here.

{¶ 58} First, the lead opinion avoids acknowledging the actual absurdity in the statute—i.e., the notion that the United States Supreme Court would recognize new state rights. Of course, the lead opinion could not plausibly take the position that believing that the United States Supreme Court might conclusively recognize new rights under Ohio law is reasonable, because that position has been expressly rejected by the United States Supreme Court itself. *See West*, 311 U.S. at 236, 61 S.Ct. 179, 85 L.Ed. 139; *Johnson*, 520 U.S. at 916, 117 S.Ct. 1800, 138 L.Ed.2d 108. Instead, the lead opinion attempts to dispel any absurdity concerns by stating that "it is not obviously unintended" for the statute to permit petitions based only on decisions of the United States Supreme Court, because the statute mentions only

decisions of that court. Lead opinion at ¶ 27. This fails to acknowledge, much less resolve, the actual absurdity in the statute.

{¶ 59} Second, the only material relied on by the lead opinion for its understanding of the absurdity doctrine is a book on statutory interpretation written by the late Justice Antonin Scalia and Bryan Garner. *See* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (2012). The lead opinion completely ignores our precedent on the doctrine, discussed above, which does not match the views expressed in the book. *E.g.*, *White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, at ¶ 29-34 (applying the absurdity doctrine to recognize a substantive exception to a statutory firearm specification). By proceeding in this manner, the lead opinion effectively says that it is permissible to ignore precedent if one can support a point solely by citing the academic writings of a wise or favored jurist. It is not.

{¶ 60} Third, even if our precedent on the absurdity doctrine did match the contours of the view preferred by the lead opinion—applying it to correct only technical or ministerial errors rather than substantive ones—the doctrine would still properly be applied here. The recognition of a new "federal or state" right is what provides the substantive basis for granting relief to an inmate in Parker's position. The statute's identification of the court that would recognize the right serves only a technical function: it limits the decisions warranting the entertaining of a petition to those issued by the United States Supreme Court, a court of last resort. By incorrectly presupposing that the United States Supreme Court, rather than this court, is the court of last resort that would recognize new rights under state law, the General Assembly has made a technical error that may be corrected by applying the absurdity doctrine. Doing so is necessary to "make sense of the text." (Emphasis omitted.) Scalia & Garner at 235.

{¶ 61} Ultimately, the lead opinion believes that the General Assembly has made a "policy" choice, lead opinion at ¶ 37, but it cannot explain what that policy

choice is without rendering part of the statute meaningless. The absurdity doctrine is the only way for this court to "say what the law is," *id.* at ¶ 31. It is regrettable that a majority of this court does not do so.

## II. Whether *Hand* Applies Retroactively

{¶ 62} As its second proposition of law, the state asserts that *Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, does not apply retroactively. Specifically, it acknowledges that *Hand* would apply to cases not yet final at the time it was announced—that is, to cases that were pending on direct appeal and cases in which the defendant could still file a timely petition for postconviction relief—but it contends that *Hand* does not apply to cases, such as Parker's, that were already final.

{¶ 63} In briefing this proposition of law, both parties cite federal case law on retroactivity in support of their respective positions. In assessing retroactivity, this court is not required to apply federal case law on retroactivity, but we may do so if we wish. *State v. Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, ¶ 28-29. Nonetheless, because the parties rely on federal law, I would proceed on that basis. I express no opinion on whether Ohio should adopt a different rule of retroactivity if one is presented to us by the parties in a future case.

{¶ 64} The United States Supreme Court has stated that new rules of criminal law ordinarily do not apply retroactively to cases that are already final, but there are two types of rules that are not subject to the bar on retroactivity: one, "substantive" rules, and two, "watershed rule[s] of criminal procedure." *Teague v. Lane*, 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion); *Schriro v. Summerlin*, 542 U.S. 348, 351-352, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004).

{¶ 65} A rule is substantive if it is a "constitutional determination[] that place[s] particular conduct or persons * * * beyond the State's power to punish." *Schriro* at 351-352. Specifically, substantive rules "include 'rules forbidding

criminal punishment of certain primary conduct,' as well as 'rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.' " *Montgomery v. Louisiana*, __ U.S. __, 136 S.Ct. 718, 728, 193 L.Ed.2d 599 (2016), quoting *Penry v. Lynaugh*, 492 U.S. 302, 330, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).  Notably, "the retroactive application of substantive rules does not implicate a State's weighty interests in ensuring the finality of convictions and sentences."  *Id.* at __, 136 S.Ct. at 732.  " 'There is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose.' "  *Id.*, quoting *Mackey v. United States*, 401 U.S. 667, 693, 91 S.Ct. 1171, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring).

{¶ 66} By contrast, a rule is procedural if it is concerned with the accuracy and fairness of the proceeding and if it regulates "only the manner of determining the defendant's culpability." (Emphasis deleted.) *Schriro* at 353.  "Such rules alter 'the range of permissible methods for determining whether a defendant's conduct is punishable.' "  *Welch v. United States*, 578 U.S. __, 136 S.Ct. 1257, 1265, 194 L.Ed.2d 387 (2016), quoting *Schriro* at 353.  " 'They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.' "  *Id.*, quoting *Schriro* at 352.  A "watershed" rule of procedure is one that "implicat[es] the fundamental fairness and accuracy of the criminal proceeding."  *Saffle v. Parks*, 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990).

{¶ 67} Both *Hand* and the present case involve the constitutionality of R.C. 2901.08(A).  The defendant in *Hand* entered pleas of no contest to several first- and second-degree felonies.  R.C. 2929.13(F)(6) provides that a court shall impose a prison term for a first- or second-degree felony if the offender previously "was convicted of or pleaded guilty to" any first- or second-degree felony (or a substantially equivalent offense).  In *Hand*, the trial court concluded that that

provision applied because the defendant had a prior juvenile adjudication for aggravated robbery and R.C. 2901.08(A) provided that a prior juvenile adjudication "is a conviction for a violation of the law * * * for purposes of * * * the sentence to be imposed."[5]

{¶ 68} On appeal in *Hand*, we considered whether R.C. 2901.08(A)'s requirement that a prior juvenile adjudication be treated as a prior offense under R.C. 2929.13(F) was constitutional. We held that it was not:

> R.C. 2901.08(A) violates the Due Process Clauses of Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution because it is fundamentally unfair to treat a juvenile adjudication as a previous conviction that enhances either the degree of or the sentence for a subsequent offense committed as an adult.

*Hand*, 140 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, at paragraph one of the syllabus.

{¶ 69} I would hold that *Hand* applies retroactively. *Hand* does not state a procedural rule. That is, it does not state a rule concerned with the accuracy and fairness of the proceeding, nor does it regulate "the manner of determining the defendant's culpability" (emphasis deleted), *Schriro*, 542 U.S. at 353, 124 S.Ct. 2519, 159 L.Ed.2d 442. Rather, *Hand* states a substantive rule. Although previously a defendant with a prior juvenile adjudication would receive a mandatory sentence under R.C. 2901.08(A) because of that juvenile adjudication,

---

5. The present case is very similar to *Hand*. Parker pleaded guilty to aggravated robbery, a first-degree felony, and having a weapon under a disability. He received an eight-year prison sentence, and the trial court made that sentence mandatory pursuant to R.C. 2929.13(F)(6) because Parker had a prior juvenile adjudication for felonious assault, which it held constituted a prior conviction under R.C. 2901.08(A) for the purpose of determining the sentence to be imposed.

after *Hand*, a prior juvenile adjudication may *not* be the basis of such a punishment. *Hand* therefore states a rule " 'prohibiting a certain category of punishment' " (mandatory sentences) for " 'a class of defendants because of their status or offense' " (individuals with a prior juvenile adjudication of delinquency). *Montgomery*, __ U.S. __, 136 S.Ct. at 728, 193 L.Ed.2d 599, quoting *Penry*, 492 U.S. at 330, 109 S.Ct. 2934, 106 L.Ed.2d 256. *Hand* therefore applies retroactively to cases on collateral review.

### III.  The Lead Opinion's Reliance on Res Judicata
### Is Both Incorrect and Dictum

{¶ 70} Finally, the lead opinion incorrectly relies on res judicata as an independent reason for barring Parker's claim.  For res judicata to apply here, Parker would have to be raising a claim that he either did raise or could have raised on direct appeal.  *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus.  The claim Parker raised on direct appeal (that R.C. 2901.08(A) was unconstitutional) is not the same claim as the one he seeks to assert now (that *Hand* applies retroactively).  Nor could he have argued before *Hand* was issued that *Hand* applies retroactively.  For that reason, the lead opinion's application of res judicata to this case is incorrect.

{¶ 71} The lead opinion cites *State v. Szefcyk*, 77 Ohio St.3d 93, 95-96, 671 N.E.2d 233 (1996), but that decision does not support application of res judicata here.  The petition for postconviction relief at issue in *Szefcyk* was not seeking retroactive application of a new substantive rule of constitutional law.  Rather, the petition in that case sought retroactive application of a new decision interpreting a statute based on this court's view of the General Assembly's intent.  But by the time we decided *Szefcyk*, the General Assembly had amended the statute at issue to clarify that our view of its intent was incorrect, superseding the decision the petitioner sought to have applied retroactively.  *Id.* at 94-95, fn. 1.  We therefore applied res judicata to the petition, and we did not consider the law on retroactivity.

That is a far cry from what occurred here. In any event, because it is simply an alternative holding, the lead opinion's application of res judicata is dictum and should not be viewed as binding.

### IV. Conclusion

{¶ 72} For all these reasons, I would hold that R.C. 2953.23(A)(1)(a) permits Parker's petition for postconviction relief, that this court's decision in *Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, states a substantive rule that applies retroactively, and that Parker should therefore have an opportunity to be considered for parole. Because the majority applies R.C. 2953.23(A)(1)(a) to bar Parker's petition notwithstanding the issues discussed above, I respectfully dissent.

{¶ 73} The General Assembly should correct the error made by the majority's application of the statute, and eliminate any confusion, by amending R.C. 2953.23(A)(1) to make clear that it permits an untimely or successive petition for postconviction relief based on a decision issued by this court recognizing a new state right.

_____

**DONNELLY, J., dissenting.**

{¶ 74} When appellee, Corey J. Parker, was sentenced in 2011, he had a prior adjudication of delinquency, which caused his sentence to be mandatory and rendered him ineligible to apply for judicial release. He appealed that issue, claiming violations of the Constitutions of the United States and Ohio, and he was ultimately proved right. Parker's argument was prescient in that it was adopted by this court in 2016, but unfortunately for Parker, it was not adopted in his own direct appeal.

{¶ 75} Four years after Parker's argument was rejected, this court adopted the rule of law that he had proposed. In *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, paragraph one of the syllabus, we held that "it is

fundamentally unfair to treat a juvenile adjudication as a previous conviction that enhances either the degree of or the sentence for a subsequent offense committed as an adult." Under *Hand*, Parker's sentence would not be mandatory and he would be eligible to apply for judicial release.

{¶ 76} One purpose of appellate courts is to right wrongs—for example, to vacate a mandatory sentence that was not required by law. The lead opinion explains its conclusion that no court in Ohio has jurisdiction to hear Parker's otherwise constitutionally sound argument, going to great pains to ensure that justice is not done. This court, like the Eighth District Court of Appeals, treats Parker's motion to vacate his sentence as a petition for postconviction relief pursuant to R.C. 2953.23, even though Parker specifically states that he is not seeking postconviction relief. Nothing requires this court to apply R.C. 2953.23, despite the lead opinion's truculent insistence, and its inapposite reference to *State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431, in rejecting my suggestion that Parker can avail himself of Civ.R. 60(B)(5). *Schlee* allows Parker's motion to be recast as a petition for postconviction relief—it does not require it. *Id.* at ¶ 12. I believe that the better approach would be to recast Parker's motion as a Civ.R. 60(B)(5) motion because it would serve the interests of justice by not punishing a person beyond what current law requires. Parker merely seeks a remedy to rectify his unlawful sentence. The lead opinion, however, by engaging in herculean efforts to rebuke each dissent, appears obstinately bent on denying him his opportunity for justice.

{¶ 77} Civ.R. 60(B) "is intended as a catch-all provision reflecting the inherent power of a court to relieve a person from the unjust operation of a judgment." *Caruso-Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64, 448 N.E.2d 1365 (1983), paragraph one of the syllabus. Although a civil rule, Civ.R. 60(B) may be invoked to challenge a judgment issued in a criminal case. *E.g.*, *State ex rel. Richard v. Seidner*, 76 Ohio St.3d 149, 152, 666 N.E.2d 1134 (1996) (addressing

merits of a Civ.R. 60(B) motion challenging a conviction); *see* Crim.R. 57(B) (courts "shall look to the rules of civil procedure * * * if no rule of criminal procedure exists").

{¶ 78} Civ.R. 60(B) states that "[o]n motion and upon such terms as are just, the court may relieve a party * * * from a final judgment, order or proceeding for * * * (5) any * * * reason justifying relief from the judgment." "[T]o prevail on a Civ.R. 60(B) motion for relief from judgment, the movant must establish that '(1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time * * *.' " *Richard* at 151, quoting *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus; *accord Jackson v. Ohio Adult Parole Auth.*, 140 Ohio St.3d 23, 2014-Ohio-2353, 14 N.E.3d 1003, ¶ 18 (lead opinion). If Parker were given the opportunity to state his case, it appears that he could successfully establish each element of the Civ.R. 60(B) test: *Hand* appears to create a meritorious claim that would justify relief under Civ.R. 60(B)(5) and Parker's motion was filed within a reasonable time after *Hand* was decided.

{¶ 79} When this court recognizes a new right grounded on the Ohio Constitution, as it did in *Hand*, we should pave the road to assertion of that right, not fill it with obstacles. On direct appeal, Parker asserted the same right that we ultimately recognized under the Ohio Constitution. It is fundamentally unfair to subject him and others similarly situated to a mandatory sentence that this court's current interpretation of constitutional law does not permit. In the interests of justice, I would consider Parker's motion to vacate his sentence to be a motion for relief from judgment pursuant to Civ.R. 60(B)(5). I would remand the case to the trial court with instructions to hold a hearing on the merits of that motion. I dissent.

—————————————

**STEWART, J., dissenting.**

{¶ 80} The court's decision today creates a dilemma: appellee, Corey J. Parker, is serving a void sentence under our precedent, yet a majority of this court is telling him that he has no legal means of challenging that void sentence and that this court has no authority to enforce our own precedent.

{¶ 81} It is a given that Parker's sentence is void. In *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, paragraph one of the syllabus, we held that R.C. 2901.08(A), under which Parker received a mandatory sentence, "violates the Due Process Clauses of Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution because it is fundamentally unfair to treat a juvenile adjudication as a previous conviction that enhances either the degree of or the sentence for a subsequent offense committed as an adult." Parker raised a due-process challenge to R.C. 2901.08(A) in his direct appeal, a fact that we noted in *Hand*, *id.* at ¶ 23.

{¶ 82} Being unconstitutional, R.C. 2901.08(A) was void ab initio. The United States Supreme Court has stated: "An unconstitutional law is void, and is as no law." *Ex parte Siebold*, 100 U.S. 371, 376, 25 L.Ed. 717 (1880); *accord Middletown v. Ferguson*, 25 Ohio St.3d 71, 80, 495 N.E.2d 380 (1986); *Cincinnati, Wilmington & Zanesville R.R. Co. v. Clinton Cty. Commrs.*, 1 Ohio St. 77, 86 (1852); *Hogg v. Zanesville Canal & Mfg. Co.*, Wright 139, 1832 WL 26, *5 (1832). Because Parker was sentenced under an unconstitutional statute, his sentence is void and " 'the parties are in the same position as if there had been no judgment.' " *State v. Billiter*, 134 Ohio St.3d 103, 2012-Ohio-5144, 980 N.E.2d 960, ¶ 10, quoting *Romito v. Maxwell*, 10 Ohio St.2d 266, 267-268, 227 N.E.2d 223 (1967).

{¶ 83} Parker's problem is that this court has held that "[w]here a criminal defendant, subsequent to his or her direct appeal, files a motion seeking vacation or correction of his or her sentence on the basis that his or her constitutional rights have been violated, such a motion is a petition for postconviction relief as defined

in R.C. 2953.21." *State v. Reynolds*, 79 Ohio St.3d 158, 679 N.E.2d 1131 (1997), syllabus; *see also State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431, ¶ 12. And as applicable to Parker, whose petition was filed outside the 365-day period prescribed by R.C. 2953.21(A)(2), the trial court could consider the petition only if he claimed that "the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in [his] situation, and the petition asserts a claim based on that right," R.C. 2953.23(A)(1)(a). Additionally, a person filing a petition after the deadline must also show "by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence." R.C. 2953.23(A)(1)(b).

{¶ 84} As the lead opinion notes, *Hand* was issued by this court, not the United States Supreme Court, so that decision does not trigger R.C. 2953.23(A)(1)(a)'s exception to the time limit for seeking relief under R.C. 2953.21. And Parker's claim neither alleges a trial error that affected his guilt nor challenges a sentence of death. *See State v. Keith*, 12th Dist. Butler No. CA2013-07-131, 2014-Ohio-169, ¶ 17, quoting *State v. Carter*, 12th Dist. Clinton No. CA2006-03-010, 2006-Ohio-4205, ¶ 16 (" 'the plain language of R.C. 2953.23(A)(1)(b) extends only to trial error and does not extend to sentencing errors, except those occurring within the capital punishment context' "). In short, Ohio's postconviction-relief statute does not, on its face, afford a means for Parker to obtain relief.

{¶ 85} This, however, does not end the analysis. In *Montgomery v. Louisiana*, ___U.S.___, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016), the United States Supreme Court held that at a minimum, "[i]f a state collateral proceeding is open to a claim controlled by federal law, the state court 'has a duty to grant the relief

that federal law requires.' " *Id*. at __, 136 S.Ct. at 731, quoting *Yates v. Aiken*, 484 U.S. 211, 218, 108 S.Ct. 534, 98 L.Ed.2d 546 (1988). In other words, if the federal Constitution grants a state prisoner a postconviction remedy, a state court is obligated to provide such relief.

{¶ 86} We should narrow our application of *Reynolds* and *Schlee* to acknowledge that motions to vacate void sentences are not petitions for postconviction relief that fall within R.C. Chapter 2953. We have held that a trial court has continuing jurisdiction "to correct a void sentence." *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 19. And we have not only instructed defendants that a motion to correct an illegal sentence "is an appropriate vehicle for raising the claim that a sentence is facially illegal" but have further stated that such a motion may be made "at any time." *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 25. If the words "at any time" are to have meaning, we have to create a vehicle for raising such a claim that is not subject to the time limit of the postconviction-relief statute. This we can easily do, by allowing defendants to challenge void sentences in motions that do not satisfy R.C. 2953.23(A)(1)(a)'s exception to the time limit for seeking relief under R.C. 2953.21.

{¶ 87} The lead opinion protests that this court has "never held that a motion to correct a void sentence provides a vehicle for correcting a sentence that allegedly violates the protections of the United States Constitution," instead reserving that right for statutory violations only. Lead opinion at ¶ 35. Surely, the lead opinion is not adopting the position that a defendant who suffers a constitutional deprivation is to be treated with less solicitude than a defendant who has suffered a statutory deprivation? And the lead opinion's assertion that the judge who sentenced Parker complied with the applicable statute utterly fails to comprehend that a law that is unconstitutional is void ab initio. It thus makes no difference that Parker was

properly sentenced at the time—what is important is that he is currently serving prison time on the basis of a law that we have struck down as unconstitutional.

{¶ 88} In the end, the lead opinion seems content to invoke principles of res judicata to keep Parker in prison. But principles of res judicata apply only to valid final judgments, and in similar contexts, we have held that they do not apply to void sentences. *See State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 30. Void is void: it matters not whether a sentence is statutorily void or constitutionally void. To hold otherwise is to refuse to ensure that the law as we have defined it is enforced. I therefore vehemently dissent.

—————————————

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mary M. Frey, Assistant Prosecuting Attorney, for appellant.

Mark A. Stanton, Cuyahoga County Public Defender, and Erika B. Cunliffe, Assistant Public Defender, for appellee.

—————————————