[Cite as *State v. Jung*, 2020-Ohio-186.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT**
**COUNTY OF CUYAHOGA**

STATE OF OHIO,                              :

    Plaintiff-Appellee,           :

                                       No. 108223

    v.                                         :

MATTHEW C. JUNG,                            :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** January 23, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-14-591390-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Daniel T. Van and Tasha Forchione,
Assistant Prosecuting Attorneys, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and
Cullen Sweeney, Assistant Public Defender, *for appellant.*

MARY J. BOYLE, P.J.:

{¶ 1} Defendant-appellant, Matthew Jung, appeals from a trial court judgment ordering that his "original sentence remains imposed," which was an

indefinite sentence of two to four years in prison.  He raises one assignment of error for our review:

> The trial court erred in failing to correct its unauthorized sentence and void indefinite sentence of imprisonment for a violation of R.C. 3734.03.

{¶ 2}   Finding merit to his appeal, we reverse and remand with instructions for the trial court to resentence Jung to a definite sentence of "at least two years, but not more than four years."

## I. Procedural History and Factual Background

{¶ 3}   In September 2016, Jung entered into a plea deal involving multiple cases and charges.  In the present case, he pleaded guilty to one count of open dumping in violation of R.C. 3734.03, an unclassified felony, for dumping 13 tires.  The trial court sentenced him to one-and-a-half years of community control sanctions.  The trial court advised Jung that if he violated the terms of his community control sanctions, it would impose the maximum prison sentence in each case, which the trial court stated was "four years" for open dumping.  The trial court also notified Jung that if he violated, it would order that he serve the prison sentences in the multiple cases consecutively.

{¶ 4}   Jung subsequently violated the terms of his community control sanctions.  The trial court continued Jung's community control sanctions in each case.  The trial court again warned Jung that if he violated, he would be facing serious consequences, including maximum prison time in each case, and that it would order him to serve the sentences consecutively.  This time, however, the trial

court also advised Jung that the maximum prison sentence he was facing for open dumping was an "indeterminate sentence" of two to four years.

{¶ 5} Jung violated the terms of his community control sanctions a second time. The trial court sentenced Jung to prison "for a term of 2 - 4 years," and ordered that it be served concurrent to Jung's sentences in the other cases. The trial court also imposed a discretionary three-year period of postrelease control.

{¶ 6} Jung appealed his sentences. *See State v. Jung*, 2018-Ohio-1514, 111 N.E.3d 54 (8th Dist.). With respect to his sentence for open dumping, Jung argued that the trial court failed to consider the overriding purposes of felony sentencing under R.C. 2929.11 when it sentenced him to the maximum prison sentence of two to four years. He also argued that the trial court erred when it imposed postrelease control for an unclassified felony. We affirmed his prison sentence for open dumping, but agreed with him that the portion of his sentence that included postrelease control for a violation of an unclassified felony was contrary to law. We therefore vacated that portion of his sentence.

{¶ 7} The trial court held a hearing on January 25, 2019, stating that the Ohio Department of Rehabilitation and Correction had notified it that Jung's sentence should be a definite sentence rather than an indefinite one. Defense counsel agreed, arguing that Jung's sentence should have been a definite sentence rather than an indefinite one. Defense counsel requested the court to resentence Jung and impose a definite sentence of "at least two years, but not more than four years."

{¶ 8} The state did not take a position on the merits of the issue at the hearing except to say that it was a matter of statutory interpretation that the court needed to decide.

{¶ 9} The trial court considered the fact that Jung had appealed his sentence and this court upheld it. The trial court stated that the court of appeals "remained silent as to that indefinite sentence" and concluded because of that, "the law of the case is that [Jung was] sentenced to an indefinite two-to-four-year sentence."

{¶ 10} The trial court issued a judgment, stating "Original sentence remains imposed: 2 to 4 years at Lorain Correctional Institution. Defendant is up for parole after 2 years. Defendant not to serve longer than 4 years. Parole Board ordered to set hearing, court and victim to be notified of hearing." It is from this judgment that Jung now appeals.

## II. Final Appealable Order

{¶ 11} We must first address whether there is a final appealable order in this case because the trial court simply reimposed its original sentence. This court requested the parties to brief this issue before oral argument. Although there is a unique procedural posture in this case, both parties agree that the trial court's order is final and appealable, and so do we.

{¶ 12} Jung did not initiate the proceedings in this case; the Ohio Department of Rehabilitation and Correction did. Although Jung did not initiate the proceedings, he orally moved for the trial court to vacate his original sentence

because it was not authorized under R.C. 3734.99. Thus, the trial court's judgment in this case is akin to a judgment denying a defendant's motion to vacate his or her sentence that is contrary to law. A sentence that is not "in accordance with statutorily mandated terms" is contrary to law and may be challenged at any time. *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 8, 39.

## III. Law and Analysis

### A. Res Judicata

{¶ 13} We must first address the state's argument that because Jung could have raised this issue in his direct appeal, but did not, his arguments are barred by res judicata.

{¶ 14} Jung argues that his sentence is contrary to law because the trial court did not follow the mandates of R.C. 3734.99. The law is well settled. As the Ohio Supreme Court explained in *Fischer* nearly ten years ago:

> Judges have no inherent power to create sentences. Griffin & Katz, Ohio Felony Sentencing Law (2008) 4, Section 1:3, fn. 1. S*ee also Woods v. Telb*, 89 Ohio St.3d at 507-509, 733 N.E.2d 1103 (describing the legislative intent behind a new, comprehensive sentencing structure, including postrelease control). Rather, judges are duty-bound to apply sentencing laws as they are written. *See State v. Thomas* (1996), 111 Ohio App.3d 510, 512, 676 N.E.2d 903. "[T]he only sentence which a trial court may impose is that provided for by statute. A court has no power to substitute a different sentence for that provided for by statute or one that is either greater or lesser than that provided for by law." *Colegrove*, 175 Ohio St. at 438, 25 O.O.2d 447, 195 N.E.2d 811.

*Id.* at ¶ 22.

{¶ 15} The Ohio Supreme Court had further made it clear that res judicata does not bar a challenge to a sentence that does not comport with statutory

sentencing mandates because such sentences are contrary to law and "may be reviewed at any time, on direct appeal or by collateral attack." *Id.* at ¶ 40. The Supreme Court explained that "[a]lthough the interests in finality of a sentence are important, they cannot trump the interests of justice, which require a judge follow the letter of the law in sentencing a defendant." *Id.* at ¶ 23. Therefore the state's res judicata argument is without merit.

{¶ 16} We further note that the trial court erred when it denied Jung's request to vacate his indefinite sentence and impose a definite one based on the law-of-the-case doctrine. This doctrine is rooted in the principles of res judicata and issue preclusion and does not apply to a sentence that does not comply with statutory sentencing mandates. *Id.* at ¶ 35.

### B. R.C. 3734.99

{¶ 17} The penalties for violating open dumping under R.C. 3734.03 are set forth in R.C. 3734.99. Under R.C. 3734.99, an offender convicted of open dumping "is guilty of a felony and shall be fined at least ten thousand dollars, but not more than twenty-five thousand dollars, or *imprisoned for at least two years, but not more than four years*, or both." (Emphasis added.) The issue presented in this case is whether the language, "imprisoned for at least two years, but not more than four years," denotes a definite sentence between two and four years or an indefinite sentence of two to four years.

{¶ 18} Jung argues that *State v. Quisenberry*, 69 Ohio St.3d 556, 634 N.E.2d 1009 (1994), supports his position that his sentence under R.C. 3734.99 should have been a definite sentence. We agree.

{¶ 19} The defendant in *Quisenberry* had been convicted of failure to appear under R.C. 2937.29, which the Ohio Supreme Court explained was an unclassified felony — just as the offense in the present case. In *Quisenberry*, the Ohio Supreme Court analyzed whether R.C. 2937.99, which set forth the penalty for failure to appear, mandated an indefinite or definite sentence. At the time *Quisenberry* was decided, R.C. 2937.99 provided in relevant part that one convicted of failure to appear "be * * * imprisoned in the penitentiary not less than one nor more than five years[.]" The Supreme Court stated that the question presented was whether "the phrase 'not less than one nor more than five years' denotes a definite or indefinite term." *Id.* at 558.

{¶ 20} The Ohio Supreme Court discussed how R.C. 2937.99 was first enacted in 1965 and had never been amended, not even as part of the 1973 overhaul of felony sentencing. *Id.* It stated, "As a result, R.C. 2739.29 and 2739.99 are now somewhat anomalous. The felony is not classified by degree and the penalty is not described in language consistent with the rest of the Code." *Id.* The Supreme Court explained how the "rest of the Code," specifically former R.C. 2929.11, used "the words 'minimum' and 'maximum' in describing indefinite terms of incarceration." *Id.* For example, former R.C. 2929.11(A) stated:

"Whoever is convicted of or pleads guilty to a felony other than aggravated murder or murder, except as provided in division (D), (E), or (H) of this section or section 2929.23 of the Revised Code, shall be imprisoned for an indefinite term * * *. The indefinite term of imprisonment shall consist of a maximum term *as provided in this section* and a minimum term fixed by the court *as provided in this section.* * * *"

(Emphasis sic.) *Id.*, quoting former R.C. 2929.11(A).

{¶ 21} The Ohio Supreme Court then explained how the remainder of former R.C. 2929.11 proceeded "to provide penalties for felonies according to their degree," but because R.C. 2937.99 had "no degree," former R.C. 2929.11 was inapplicable. *Id.* The Supreme Court reasoned, however, that former R.C. 2929.11 provided guidance in determining whether R.C. 2937.99 mandated a definite or indefinite sentence. The Supreme Court explained:

We note that R.C. 2929.11 uses the words "minimum" and "maximum" in describing indefinite terms of incarceration. Moreover, not a single subsection of [former] R.C. 2929.11(B) omits these words when mandating an indefinite term. Conversely, R.C. 2937.99, the controlling statute, makes no such reference to "minimum" and "maximum" terms.

Instead, we consider the definite penalties for nonviolent third and fourth degree felonies, which are provided in R.C. 2929.11(D), to be more analogous. In discussing the definite penalties involved for these crimes, the General Assembly did not use the words "minimum" and "maximum."

*Id.* at 558-559.

{¶ 22} After reviewing the sentencing statutes at that time, the Ohio Supreme Court concluded that the relevant language in R.C. 2937.99(A) meant that "the trial court shall impose a definite sentence of at least one year but no greater than five years." *Id.* at 559.

{¶ 23} In the present case, the statute at issue has not been amended since 1994, well before S.B. 2 became effective in mid-1996. *See* Am.Sub.S.B. No. 2 (effective July 1, 1996). The hallmark of S.B. 2 was "truth in sentencing," which it accomplished in part by eliminating indefinite sentences. *Woods*, 89 Ohio St.3d at 508, 733 N.E.2d 1103.

{¶ 24} Because R.C. 3734.99 was not amended as part of S.B. 2 (or since its passage), one might think that R.C. 3734.99 requires trial courts to impose an indefinite sentence as many sentencing statutes did before S.B. 2. However, *Quisenberry* was also decided in 1994, before S.B. 2 was enacted, which was also the same year that R.C. 3734.99 was last amended. And in *Quisenberry*, the Supreme Court addressed whether an unclassified felony under pre-S.B. 2 law mandated an indefinite or definite sentence. Again, many sentencing statutes before S.B. 2 required trial courts to impose indefinite sentences, and yet despite this, the Ohio Supreme Court still interpreted the language in R.C. 2927.99 to denote a definite sentence between one and five years. Because of this, we find *Quisenberry* to be highly instructive to our analysis in this case.

{¶ 25} The relevant language in *Quisenberry* was: "not less than one nor more than five years[.]" The relevant language here is "at least two years, but not more than four years." We find the language of these statutes to be nearly identical. And thus, *Quisenberry* provides the answer to the question presented in this case. If the legislature had intended for R.C. 3734.99 to denote that a trial court impose an indefinite sentence, it would have used the phrase "indefinite sentence" prior to

the language "at least two years, but not more than four years," and it would have used "the words 'minimum' and 'maximum' in describing indefinite terms of incarceration." *Quisenberry*, 69 Ohio St.3d at 558, 634 N.E.2d 1009.

{¶ 26} The state argues that comparing R.C. 3734.99 to other statutes in 1994 establishes that the trial court did not err when it imposed an indefinite sentence of two to four years. The state cites to the penalties set forth in former R.C. 2929.11(D) regarding fourth- and fifth-degree felonies. Based upon these comparisons, the state argues that R.C. 3734.99 denotes an indefinite sentence because it does not "provide a term of imprisonment of two, three, or four years," as former R.C. 2929.11(D)(1) and (2) did for fourth- and fifth-degree felonies. However, as the Supreme Court noted in *Quisenberry*, R.C. 3734.99 is an unclassified felony and thus, the state's analogy does not apply. *Quisenberry* at 558. Moreover, the state is ignoring the fact that the Ohio Supreme Court specifically discussed R.C. 2929.11(D) regarding fourth- and fifth-degree felonies in *Quisenberry* and held just the opposite. *See id.* Thus, the state's arguments have no merit.

{¶ 27} We note that the trial court stated at the January 25, 2019 hearing that it would not have helped Jung even if it had agreed with him that R.C. 3734.99 mandated a definite sentence because it "had put in [its] journal entry" that he would receive the maximum time of "four years" if he violated. But the trial court is incorrect. A trial court has to notify a defendant of the maximum time he could receive for violating at his original sentencing hearing, but if a defendant violates

and the court imposes a prison sentence, it can impose less time. R.C. 2929.15(B)(3) ("The prison term, if any, imposed upon a violator pursuant to this division and division (B)(1) of this section shall be within the range of prison terms described in this division and *shall not exceed* the prison term specified in the notice provided to the offender at the sentencing hearing pursuant to division (B)(2) of section 2929.19 of the Revised Code."). (Emphasis added.) Indeed, the trial court also told Jung at his original sentencing hearing as well as at the second-violation hearing that if he violated, it would order the prison sentences in the multiple cases to be served consecutively, but it did not; it ordered them to be served concurrently as it was permitted to do under R.C. 2929.15(B)(3).

{¶ 28} As the Ohio Supreme Court explained in *Quisenberry*,

> [P]enal laws "shall be strictly construed against the state, and liberally construed in favor of the accused." R.C. 2901.04(A). A definite term of imprisonment is more advantageous to a defendant because he does not have to appear before the parole board. Once the sentence is served, the defendant is released and the state loses supervision over the defendant.

*Id.* at 557.

{¶ 29} The trial court explicitly stated at the January 25, 2019 hearing, Jung is "an excellent candidate" for release. The trial court could promptly ensure that occurs.

{¶ 30} We further note that we agree with the dissent that the distinction between void and voidable "continues to bedevil Ohio courts." But the Ohio Supreme Court has continued to adhere to its void-sentencing doctrine despite

having many opportunities to abandon it. Although newer members of the Ohio Supreme Court have recently criticized the doctrine (*see State v. Straley*, Slip Opinion No. 2019-Ohio-5206 (DeWine, J., concurring)), these criticisms have existed since the Supreme Court first applied it. *See State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, ¶ 31 (Lanzinger, J., dissenting) ("I am extremely troubled by the majority's application of the term 'void' to Bezak's case."); *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 39, 47 (Lanzinger, J., dissenting) ("There is danger in the majority's holding" that "Simpkins's sentence was 'void' and a nullity from the beginning."); *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, ¶ 38 (Lanzinger, J., dissenting) ("I have consistently maintained my position that this court has erroneously held that errors in sentencing render a sentence void, subject to collateral attack at any time, when at most, the error was voidable, subject to correction on direct appeal."). And until the Supreme Court decides to overrule its void-sentencing doctrine, we are bound by it.

{¶ 31} Accordingly, we sustain Jung's sole assignment of error.

{¶ 32} Judgment reversed and remanded. The trial court is instructed to resentence Jung to a definite sentence of "at least two years, but not more than four years."

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS WITH SEPARATE OPINION

SEAN C. GALLAGHER, J., DISSENTING:

{¶ 33} Although the majority's analysis regarding the nature of the sentence imposed under R.C. 3734.99 is cogent and well reasoned, I would conclude that this particular sentence is not facially void. As a result, the trial court was without jurisdiction to offer any relief and correctly denied Jung's oral motion to correct a void sentence. I dissent. I also write separately to highlight the confusion that persists over the never-ending void-voidable debate. Tellingly, the trial court in this case believed that the unsuccessful direct appeal of Jung's sentence controlled the outcome and the majority comes to a different conclusion. If separate courts can arrive at different conclusions based on the same law, it may be time to seek clarity on the topic. I believe the Ohio Supreme Court should consider this case as a vehicle to clarify the distinction between void and voidable that continues to bedevil Ohio courts. *See State v. Straley*, Slip Opinion No. 2019-Ohio-5206, ¶ 47 (DeWine, J., concurring).

{¶ 34} It is well settled that any sentence that is "facially void" is subject to collateral attack at any time. In order for a sentence to be deemed facially void, it must be apparent from the sentencing entry that the trial court exceeded its sentencing authority or failed to impose that which is required by law. *Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, at ¶ 25 (a trial court possesses jurisdiction to consider the "claim that a sentence is facially illegal at any time."). Nevertheless, if the sentence is not facially void, the trial court must possess jurisdiction to correct the sentence. A void sentence, in pertinent part, is one in which the trial court failed to adhere to the statutory limitations. In this case, the trial court imposed a sentence that comports with the statutory language — the trial court imposed a sentence of "two to four years." The applicable statute requires the trial court to impose a sentence of "at least two years, but not more than four." Thus the issue of whether the statutory language requires an indefinite or definite sentence goes beyond any facial challenge for which the trial court possesses inherent jurisdiction to remedy. This issue — whether the sentence is a definite one — is an issue of first impression with respect to this particular offense. As a result, Jung's sentence is not facially illegal.

{¶ 35} Determining whether Jung received the correct sentence requires the court to interpret the legislative intent behind the statute. In other words, the error in imposing a sentence in this case addresses the trial court's exercise of jurisdiction, which only renders the decision voidable and not subject to collateral attack. *Johnson v. Sloan*, 154 Ohio St.3d 476, 2018-Ohio-2120, 116 N.E.3d 91, ¶ 39, citing

*State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 75, 701 N.E.2d 1002 (1998), and *State v. Filiaggi*, 86 Ohio St.3d 230, 240, 714 N.E.2d 867 (1999); *Dunbar v. State*, 136 Ohio St.3d 181, 2013-Ohio-2163, 992 N.E.2d 1111, ¶ 15. Jung's claim potentially renders the original sentence voidable, not void. "'Unlike a void judgment, a voidable judgment is one rendered by a court that has both jurisdiction and authority to act, but the court's judgment is invalid, irregular, or erroneous.'" *Straley* at ¶ 25, quoting *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 12.

{¶ 36} And even if the sentence imposed was void, the trial court lacked inherent authority to correct that judgment. For example, it has been concluded that if there is an Ohio Supreme Court decision that could render a sentence void if such a decision is declared to be retroactive, any challenges to the previously imposed sentences must adhere to the limitations of the trial court's postsentencing jurisdiction, which is the exclusive remedy to collaterally challenge a sentence under R.C. 2953.21(K). *See generally State v. Parker*, Slip Opinion No. 2019-Ohio-3848. *Parker* is a plurality opinion. Although there is limited authoritative value to the decision, at the least, the justices' separate decisions are instructive — if the *Parker* court intended otherwise, there would have been little reason for the release of the separate opinions.

{¶ 37} The issue in *Parker* focused on whether the trial court possessed jurisdiction to correct a sentence based on a subsequent Ohio Supreme Court case that declared the statute upon which the defendant's sentence was based

unconstitutional. The lead opinion, authored by Justice Kennedy and joined by Justice DeWine, concluded that the defendant was precluded from seeking relief under the postconviction relief statute because none of the exceptions to the time limitations applied to Parker's case. Thus, according to the lead opinion, the trial court lacked jurisdiction to consider whether the Ohio Supreme Court decision at issue was retroactive, which had the potential to render Parker's conviction to be void because the sentence was imposed upon a statute determined to be unconstitutional. *Montgomery v. Louisiana*, 577 U.S. ____, 136 S.Ct. 718, 730, 193 L.Ed.2d 599 (2016) (concluding that a conviction under an unconstitutional law is void).

{¶ 38} The first dissent, authored by Chief Justice O'Connor, opined that the lead opinion incorrectly interpreted the legislative language, which should be interpreted to permit the defendant to invoke the trial court's jurisdiction to consider the merits of the argument. According to the first dissent, the lead opinion's application of the plain language led to an "absurd or unreasonable result" because only Supreme Court decisions could be used to invoke the trial court's jurisdiction. *Parker* at ¶ 48 (O'Connor, C.J., dissenting); *but see Beverage Holdings L.L.C. v. 5701 Lombardo, L.L.C.*, Slip Opinion No. 2019-Ohio-4716, ¶ 20 (absurdity doctrine is extremely narrow and language is not absurd when it is unreasonable, but only when it is "ridiculously unreasonable, unsound, or incongruous"). According to that analysis, the trial court possessed jurisdiction under the

postconviction relief statute to consider whether the Ohio Supreme Court decision was retroactive.

{¶ 39} The second dissent, authored by Justice Donnelly, tacitly agreed that R.C. 2953.23 did not provide the trial court with jurisdiction. Instead, Justice Donnelly concluded that the trial court's jurisdiction was authorized through the use of Civ.R. 60(B) despite the opposite conclusion being reached in *State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431 (concluding that the defendant's Civ.R. 60(B) motion was essentially one for postconviction relief under R.C. 2953.21 and subject to the same time limitations).

{¶ 40} Thus, although there is no binding authority from the *Parker* decision, a majority of the justices reached the conclusion that a potentially void sentence is not subject to the inherent powers of the trial court to correct, but requires some statutory or other legal triggering event that invokes the trial court's postdispositive jurisdiction. Only the third dissenting opinion, authored by Justice Stewart, would have concluded that the trial court had inherent, continuing jurisdiction to correct the sentence based on the later declaration that the sentence was imposed based on an unconstitutional statute.

{¶ 41} In this case, the only triggering event arguably invoking the trial court's jurisdiction was initiated by a nonparty to the action, the Ohio Department of Rehabilitation and Correction ("DRC"). The prosecutor, charged with representing the state of Ohio in criminal actions, disagreed with the DRC's intervention and opposed the DRC's recommendation to alter the sentence. After

the trial court set the matter for a hearing, Jung joined the DRC bandwagon and orally claimed his indefinite sentence was void based on his interpretation of the statutory language. During the hearing on the matter, the trial court indicated it would have imposed a maximum definite sentence if given the opportunity, but instead ordered the DRC to permit Jung the opportunity for parole. Judicial release under R.C. 2929.20 is not an option for Jung. S*ee* R.C. 2929.01(FF) ("stated prison terms" for the purposes of R.C. 2929.20 do not include unspecified felony sentences).

{¶ 42} Nevertheless, Jung's sentence is not facially void, and therefore, the trial court lacked jurisdiction to consider the arguments presented by the DRC and Jung. The trial court complied with the letter of the applicable law by imposing a sentence of at least two years, but not more than four. That the trial court's interpretation of the statutory language could be called into doubt based on adoption of the rationale advanced in an almost three-decades-old decision, that doubt does not render the sentence as being void. Jung's sentence is merely voidable, and I would affirm.